Roberta I. THOMAS
v.
UNITED STATES.
No. 474-59.

United States Court of Claims.
May 3, 1961.

Whitaker and Laramore, JJ., dissented.

Gerald B. Greenwald, Washington, D. C., for plaintiff. Blumenthal & Somers, New York City, and Becker & Maguire, Washington, D. C., were on the brief.

Laurence H. Axman, Washington, D. C., with whom was Asst. Atty. Gen. William H. Orrick, Jr., San Francisco, Cal., for defendant.

JONES, Chief Judge.

The plaintiff sues for 10 months' back pay for asserted wrongful removal as a civilian employee of the Army performing services as a clerk-stenographer, GS-3, and stationed in Germany.

The essential facts are undisputed.

The plaintiff was employed in 1953. She was in an excepted position under 5 C.F.R. 6.101(h) Schedule A. This regulation provides that any position beyond the continental limits of the United States may be filled without examination by the Civil Service Commission if appointment through competitive examination is regarded as impracticable.

On November 29, 1954, plaintiff was served with notice of proposed removal, charging that she had made a false statement in an official document. In completing the security forms in response to a request for information concerning membership, affiliation, and association with certain organizations (named on the Attorney General's list), she had written the word "None," whereas by her own admissions she had attended the George Washington Carver School and the Jefferson School of Social Science in 1946. Plaintiff replied to these charges in writing on December 6, 1954, explaining that her attendance at these schools had been discussed with a Government official prior to her being hired by the Department of the Army; that her attendance had consisted solely of her presence at one night class in each school lasting 45

minutes; that at the time of her attendance she was unaware that the schools were named on the Attorney General's list; that she did not feel that attendance for 45 minutes in each school constituted "association, membership in, or affiliation with" these schools; that previous to completing the security forms she had stated her attendance at these schools on Army personnel forms requesting information as to schools attended, and that the Counter Intelligence Corps had access to and consulted these personnel forms before she was employed; that she had a good record of 10 years of service, 7 of which had been in prior Government service, and that in the circumstances she did not feel she was guilty of falsifying the records.

On December 23, 1954, plaintiff was notified of her removal effective December 31, 1954, subject to a right to request a review under Department of the Army, Civilian Personnel Regulation E2. Plaintiff was told that if an appeal was taken the removal action would not be effective until final action on appeal, and that in the meantime she would be on annual leave or leave without pay. Regulation CPR E2 provided for successive appeals up to and including action by the Secretary of the Army, whose action would be final.

Miss Thomas appealed to the Employee Grievance Board, which unanimously recommended her reinstatement and that she be given a 5-day suspension for carelessness in completing the security forms. This recommendation was disapproved by the commanding general.

Appeal was then made to the next echelon, and finally to the Secretary of the Army in Washington who ruled that in the light of the record the penalty of removal was too severe and that pursuant to the recommendation of the Department's Employee Grievance Review Board, in which the Secretary concurred, a 30-day suspension should be substituted in lieu of removal. As a result of the Secretary's decision, the plaintiff was offered reinstatement to her overseas position.

Defendant pleads that plaintiff is not entitled to recover under the Veterans' Preference Act, 5 U.S.C.A. § 851, nor the Lloyd-La Follette Act, 5 U.S.C.A. § 652 (a) and (b). Plaintiff does not base her claim on either of these acts. She was appointed to the Army personnel service under rules which permitted appointment to the Civilian Army Personnel Service without the necessity of a competitive examination. It is doubtful whether the terms of the act under which the service was performed justified a regulation broad enough to exclude her from the benefits of the Lloyd-La Follette Act, supra. Since the requirement for a competitive examination was specifically waived by the rules she could well be considered as having served the probationary period.

█ In any event these acts grant certain affirmative rights to certain groups and classified persons. The fact that one does not come within the terms of those acts does not license someone in authority to kick an employee all over the lot as if she had no rights whatever. Those acts, while granting additional rights to certain persons, did not even purport to take from anyone not a member of the group any rights otherwise possessed. Indeed, the Lloyd-La Follette Act only affirmatively authorized back pay when there has been reinstatement, yet we have repeatedly held that even where no reinstatement has been ordered judgment for back pay may be given if the facts of the case justify such action. McGuire v. United States, Feb. 11, 1959, —— Ct.Cl. ——; Prosterman v. United States, Jan. 14, 1959, —— Ct.Cl. ——. See also Caddington v. United States, Ct.Cl.1959, 178 F.Supp. 604.

The plaintiff was serving in a foreign land, having been regularly employed. She had attended only one class of 45 minutes in each school. In filling out personnel forms she listed these two schools. In filling out security forms she did not list these schools. She claimed she did not know at the time that they were on the Attorney General's list. She states in her affidavit that the

employing officer had access to and knew of the listing in Form 57. She further states that she talked about the matter with the employing officer who did not think attending 45 minutes one time at each school would be taken seriously. But when the incident came to the attention of the commanding officer in Germany she was given notice of proposed removal. With full possession of the above facts, she was ordered discharged subject to appeal. In the meantime she was to be on leave without pay. The first appeal was to the Employee Grievance Board which recommended that instead of dismissal she be given a 5-day suspension for carelessness in making out her file papers.

But the commanding officer refused to accept the recommendation and ordered the dismissal. She was told that she would not be furnished transportation back home. The record does not show whether or how long he may have served as a top sergeant before being promoted, but he certainly showed little understanding of a very human problem. At any rate, here was a woman without funds in a strange distant land, and was forbidden employment. Finally, when her desperate condition was disclosed and she told the officials she was completely without funds, they arranged for her transportation back to the United States.

In November, the Secretary of the Army ordered that she be given a 30-day suspension in lieu of removal. As we construe the order of the Secretary, the effect of the plain language was to cancel the order of dismissal and substitute a 30-day suspension.[1] It is true the officials offered to reinstate her in her foreign position. We consider this offer to have been wholly unnecessary, since the decision of the Secretary had the effect of automatically restoring her subject to the 30-day suspension. At any rate, this phase was solved, since plaintiff had found it difficult to find employment in this country with this cloud hanging over her, was in debt, and in no financial condition to return to Germany. She accordingly resigned effective November 29, 1955.

This is a strange case. One is reminded of the story in Victor Hugo's "Les Miserables." Jean Valjean was the sole support of a widowed sister who had seven children. Temporarily out of work, he stole a loaf of bread to feed them. He was captured, tried, and convicted. In describing the sentence, Hugo said, in our civilization there are terrible hours, such as those when the * * * law pronounces shipwreck upon a man. What a mournful moment is that in which society withdraws itself and gives up a thinking being. Jean Valjean was sentenced to five years in the galleys."

That was fiction. This is fact.

The plaintiff had gone to a far-away land to perform secretarial work for the Army. She had a good record of a previous service in and out of the Government. But because, forsooth, she had failed to list in her security form the two schools which she attended a total of 90 minutes, she was discharged and given a record that would reflect on her loyalty and integrity. Moreover, this action was taken despite the fact that the plaintiff had listed these schools on another form and thus clearly had shown herself guiltless of any effort at concealment.

In this case there is not even the slightest indication of disloyalty. That is not embodied in the charge. The complaint is failure to disclose attendance at two classes. When that omission is laid alongside the fact that disclosure was made in an accompanying form and that defendant had in its hands full knowledge of the facts, the difference becomes so much tweedledee. It does not rise to the dignity of a charge, but sinks to the level of a suspicion.

To use these simple facts, that when taken together became almost completely

1. See Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403; Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L. Ed.2d 1012.

meaningless as a basis for discharging an employee in a foreign land and placing a cloud of suspicion and question of integrity and loyalty on an otherwise unquestioned record of service, is an act that cannot be justified on any reasonable basis.

The case of Brown v. United States, 122 Ct.Cl. 361, is inapposite. In that case there was a discharge. In this case there was no discharge. The attempted discharge was set aside and a 30-day suspension substituted therefor by the Secretary of the Army, whose decision was final. The order included these words: "that a 30-day suspension be imposed in lieu of removal." The minor officials misinterpreted and failed to carry out the clear wording of that decision.[2] This court has jurisdiction of contracts, express or implied in fact. Less the 30 days' suspension, the plaintiff remained on the payroll. That the laborer is worthy of his hire is gospel as well as the law of life. In addition, it is the law of our country. This court represents the conscience of the Nation. Neither justice, conscience, nor the law itself calls for setting aside the action of the Secretary of the Army and substituting therefor the mistaken interpretation of a minor official who had no authority to change the Secretary's order.

The law is not an end in itself. It is a means to an end. Its primary purpose is to reach the ends of justice between man and man and between the citizen and his government. If it fails in that one thing, it fails in everything. Both justice and conscience call for removing any blemish from the record of one whose action viewed in its worst light could only call for a temporary suspension. That result has already been reached by the action of the Secretary of the Army.

Fortunately, the Secretary of the Army so worded his decision as to constitute a setting aside of the order of removal which in all the circumstances we construe as automatic reinstatement at the end of the 30-day suspension. It follows therefore that the plaintiff is entitled to back pay for that period of her service during which she was wrongfully removed. Plaintiff's vindication by the Secretary of the Army would merely be a Pyrrhic victory if that vindication were not read for what it was—authorization of pay for the period of her removal less the 30 days thought adequate as a reprimand by the Secretary of the Army.

Plaintiff's motion for summary judgment is granted and defendant's similar motion is denied.

Judgment will be entered for the plaintiff with the amount to be determined pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

DURFEE and MADDEN, Judges, concur.

WHITAKER, Judge (dissenting).

Plaintiff's superiors acted unduly harshly and unjustly deprived plaintiff of her position; but we must not let our indignation over their treatment of her induce us to make bad law.

Let us start at the fundamentals. The United States, as a sovereign, can only be sued if it consents to be sued. Only by Act of Congress, approved by the President, can that consent be given.

Congress has consented that all employees of the United States, except those in the State Department, may sue it for their wrongful discharge in only two different Acts, one, the Lloyd-La Follette Act, 5 U.S.C.A. § 652, 62 Stat. 354, and the other, the Veterans' Preference Act, 5 U.S.C.A. § 863, 58 Stat. 390. In no other Act has Congress consented that its employees may sue the United States. Therefore, unless plaintiff's rights under those Acts have been violated, she may not sue the United States. Brown v. United States, 122 Ct.Cl. 361, 377. Plaintiff may not sue

2. United States v. Wickersham, 201 U.S. 390, 26 S.Ct. 469, 50 L.Ed. 798.

under those Acts, because her position was excepted from the terms of them. 5 C.F.R. 6.101(h), Schedule A. That is what an "excepted position" means—it is excepted from the provisions of the Civil Service Acts. Having been excepted from their terms, she is not entitled to their protection.

Until the original Civil Service Act was passed, the provisions of which are now incorporated in the Lloyd-La Follette Act, an employee could be discharged at will, without redress. An employee in an excepted position is in the same position as were all employees before the passage of the Civil Service Act, and may be discharged at will, without redress.

I do not think Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403, is to the contrary. The plaintiff in that case was a member of the foreign service and was protected neither by the Lloyd-La Follette Act nor the Veterans' Preference Act. However, the McCarran Rider, 65 Stat. 581, gave the Secretary of State authority to summarily discharge an employee "whenever he shall deem such termination necessary or advisable in the interests of the United States." But by regulation the Secretary had limited his power to discharge an employee by prescribing that certain procedures should be followed prior to discharge. The Supreme Court held that these regulations were binding on the Secretary and, since the procedure set forth was not followed, plaintiff was entitled to recover.

The reasoning of the Supreme Court was that, since these employees did not have the protection of the Lloyd-La Follette Act, and might be discharged whenever the Secretary "deemed" it advisable, he had to follow his own regulations in coming to the conclusion that it was advisable; otherwise the power to discharge had not been lawfully invoked.

Plaintiff, of course, does not come within the terms of the McCarran Rider; nor does she come within the terms of any other Act regulating the discharge of Government employees.

I regret to disagree, but this court has no power to entertain a suit over which Congress has not given it jurisdiction.

LARAMORE, Judge, joins in the foregoing dissenting opinion.