Laramore, Judge,
delivered the opinion of the court:
In this case, plaintiff seeks recovery of back pay as the result of a suspension and removal from Government employment, where such removal action was reversed and an offered restoration was declined.
Plaintiff initially seemed to allege violation of his rights as a veteran. However, the facts show plaintiff to be a non-veteran, and plaintiff has apparently abandoned any argument as to entitlement as such.
Plaintiff also on brief and in oral argument makes no claim to entitlement under the Lloyd-LaFollette Act (5 U.S.C. 652). Also, in oral argument plaintiff has abandoned any claim for pay during the period when he was on voluntary leave.
The parties have agreed that the present case is submitted on the question of liability only. Thus, plaintiff’s present claim is based on either a violation of the provisions of the 1950 Security Act, 64 Stat. 476, or on general equitable grounds under the doctrine of Thomas v. United States, 153 Ct. Cl. 399; 289 F. 2d 948.
The facts are these: Plaintiff, a non-veteran, was employed by the Alaska District of the Corps of Engineers in an excepted position on July 6, 1950, and was thereafter continuously employed as either an engineer or construction inspector until his dismissal.
At the time plaintiff submitted his application for employment he also submitted a Standard Form 57 which contained untrue information; i.e., in answer to a question, “Since your 16th birthday, have you ever been arrested, indicted, * * he answered, “No”. Shortly thereafter, the Security Officer of the Corps of Engineers obtained information that plaintiff had been arrested while living in Hawaii. However, the usual and customary practice of communicating this information to the personnel officer for a determination as to his suitability for retention was not followed.
*400 In about April of 1954 the personnel officer of the Alaska District, Corps of Engineers, reviewed the files and discovered information that plaintiff had been arrested. A conference was had with plaintiff wherein plaintiff admitted the fact of his arrest.
Since the information concerning plaintiff’s arrest had been held for several years, and in view of plaintiff’s good employment record, it was concluded that no dismissal action would be taken. Instead, it was decided that plaintiff would be afforded an opportunity to correct his Form 57 and that he would be retained in service, but that his security clearance would be withdrawn. As a result, it was necessary to transfer him to a non-sensitive position (GS-7) which did not require a security clearance, since all positions in his grade (GS-9), which plaintiff was qualified to fill, were sensitive positions. The situation was explained to plaintiff and he acquiesced in the proposed disposition of the matter.
The following year, in 1955, most of the excepted positions in the Alaska District, and the persons occupying such positions, were blanketed into the competitive civil service, but plaintiff and some 20 other employees were retained in “Status Quo”. The reason given relating to plaintiff was that plaintiff was not blanketed in because of the derogatory information heretofore mentioned.[1]
In 1955 the Alaska District initiated an investigation to verify the data furnished by plaintiff in his corrected Form 57. During the course of this investigation, information was obtained which led the District to believe that plaintiff had been arrested on two other occasions, which arrests were not mentioned in plaintiff’s corrected Form. On May 7, 1956, plaintiff was, therefore, served with a notice of proposed removal for “willful action in deliberate falsification of records, * * This action was pursuant to paragraph 4-2, section 4, of Civilian Personnel Regulations S 1.4 (1 August 1955).
*401 Plaintiff replied to the letter of proposed removal and denied that such arrests had taken place. As a result, the notice of removal was extended pending further investigation. Plaintiff was informed that he could work or elect to take annual leave or leave without pay for all or any part of this period. Plaintiff continued to work until September, at which time he elected to take leave during the pendency of the proceedings. Accordingly, plaintiff began taking his accumulated annual leave on September 26, 1956. At about that time, the plaintiff moved with his family from Alaska to Seattle, Washington. Plaintiff paid his own traveling expenses, but the Corps of Engineers defrayed the cost of moving plaintiff’s family and household effects to Seattle. Thereafter, upon the expiration of his annual leave, plaintiff requested several times, and was granted, leave without pay. The investigation of plaintiff was completed, and by letter dated August 20, 1957, plaintiff was served with a second notice of proposed removal on the ground of failing to disclose two arrests after being given an opportunity to submit a corrected form.
Plaintiff, on August 27, 1957, having returned to Alaska, wrote the District Engineer stating a desire to return to duty, and plaintiff did in fact return to duty on August 27, 1957.
Plaintiff replied to the second notice of proposed removal and requested a hearing.
On or about September 20,1957, plaintiff was served with a notice of decision to remove him effective October 2, 1957. This notice advised him of his right to request a review of the action under the grievance procedures within 10 days after the effective date of the action.
Plaintiff left Alaska in late September or early October of 1957, his travel expenses being paid by the Corps of Engineers.
On October 5, 1957, plaintiff sought a review by a grievance committee, this being the type of hearing provided for under the pertinent civilian personnel regulations governing removal based on alleged delinquency or misconduct.
A grievance hearing was held at Anchorage, Alaska, on November 18,19, and 20,1957. Plaintiff received notice of *402 the hearing but did not attend. The apparent reason was that plaintiff requested the Corps of Engineers to provide transportation for him to Anchorage, but the agency refused to do so, there being no authority shown for such payment.
The Grievance Committee heard testimony of various witnesses and inquired into plaintiff’s entire work record. The Grievance Committee recommended to the District Engineer that the removal action be sustained, and the removal was sustained.
Plaintiff appealed this decision to the Division Engineer and subsequent events led to a reversal of the removal action, it being determined that he had not been twice arrested as previously determined. As the result of the aforementioned reversal, plaintiff’s restoration was ordered and plaintiff was so advised.
Thereafter, the District Engineer’s Office wrote plaintiff, as follows:
1. Reference letter from the Division Engineer, North Pacific Division, stating that your removal was not sustained and that action be taken for your restoration.
2. You previously occupied a Construction Inspector (AP), GS-1930-7 position in the Construction Division. Due to a reorganization all inspectors are now assigned to the Project and Resident Engineer Offices. Therefore you are offered restoration to a Construction Inspector (General), GS-1930-7 position in the Fort Richardson Residency.
3. You are advised that you are not entitled to back pay and that your restoration will be to a new appointment as of a current date.
4. Please advise this office at your earliest convenience regarding your plans for return to duty.
Plaintiff, on August 4, 1958, wrote a letter to the Comptroller General asking whether “legal authority exists for payment of my back-pay under the circumstances.”
Later, plaintiff wrote the Division Engineer, which letter read in part, as follows:
I received a copy of your letter and an offer of restoration in a registered letter from The District Engineer, Alaska District, dated 25 August 1958. This restoration offer states that I would be given a new appointment and that I am not entitled to back pay.
*403 * * * I feel that the restoration offer by the Alaska District is a meaningless gesture lacking justice and equity and violates the intent of your directive of 30 June 1958.
On September 15,1958, plaintiff wrote the District Engineer, which letter stated in part, as follows:
Your determination that I am not entitled to back pay, despite your illegal action in this matter, is not acceptable. Your offer of restoration remains a meaningless gesture, incompatible with justice or equity.
You are hereby advised that I will return to duty at such time that my restoration, complete with back pay and other benefits, is effected. In the event that these conditions are not met expeditiously, a Declaratory Judgment will be sought in Federal Court.
The District Engineer replied that no further action would be taken pending a decision of the Comptroller General.
On November 5, 1958, the General Accounting Office denied plaintiff’s claim, stating:
Your claim for compensation subsequent to your separation from your position with the Corps of Engineers in Alaska to date of restoration, is disallowed for the reasons stated below.
‡ $ $ $ $
As you were a non-veteran and not in the classified competitive service at the time of your suspension the back pay benefits of the Act of June 10,1948, cannot be extended to you. Nor are we aware of any law extending such benefits to the present situation. Accordingly, there is no legal basis upon which payment can be made to you for the compensation lost on account of your removal from duty.
After a reaffirmance by the General Accounting Office, plaintiff asked for reconsideration in the light of the 1950 Security Act, supra, but the General Accounting Office ruled that such Act was inapplicable to plaintiff since he had not been removed pursuant thereto.
Plaintiff never resumed his employment with the Corps of Engineers, and instituted this action on April 25, 1960.
As previously stated, plaintiff’s cause of action is predicated on either the 1950 Security Act, supra, or on general equitable grounds.
*404 The 1950 Security Act, supra, provides in pertinent part, as follows:
* * * Provided further, That any person whose employment is so suspended or terminated under the authority of this Act may, in the discretion of the agency head concerned, be reinstated or restored to duty, and if so reinstated or restored shall be allowed compensation for all or any part of the period of such suspension or termination in an amount not to exceed the difference between the amount such person would normally have earned during the period of such suspension or termination, at the rate he was receiving on the date of suspension or termination, as appropriate, and the interim net earnings of such person: * * *.
We can find no merit in plaintiff’s contention that he should be paid under the above Act. Simply stated, the plaintiff at the time of his removal occupied a non-sensitive position, bearing in mind that his demotion or transfer to this position was purely a voluntary acquiescence on his part. The Supreme Court, in Cole v. Young, 351 U.S. 536, held that the 1950 Security Act, supra, was inapplicable to persons occupying non-sensitive positions.
As a matter of fact, plaintiff was not removed under the Security Act. He was removed for misconduct or delinquency under Civilian Personnel Regulations S 1.4, paragraph 4 — 2, as the facts in this case specifically show (see findings 16,17, and 46).
Plaintiff, in an attempt to avoid the plain language of the regulation and the impact of the Supreme Court decision in Cole v. Young, supra, argues that because of “the continuous overtones of ‘security risk’ charges and related actions by defendant, plaintiff is entitled to the back-pay provisions” of the 1950 Security Act. Perhaps some unfortunate language was used in certain testimony during the course of the grievance hearing regarding plaintiff’s downgrading. However, the downgrading is not the basis of this law suit. He was simply downgraded because there were no non-sensitive GS-9 positions available, his security clearance having been withdrawn. So, whether or not plaintiff was a security risk is immaterial here, since he was separated under regulations *405 designed specifically to govern removals based on alleged delinquency or misconduct.
In this posture, this court’s decision in Thomas v. United States, supra, is inapposite. Plaintiff in the removal action was not branded as a security risk. True, the basis of his discharge was found to be erroneous, yet no “overtones” of security were present. The Alaska District just made a mistake which it attempted to correct by giving plaintiff his position back.
Moreover, the fact that plaintiff refused the offer of restoration removes any equitable consideration from this case. He attempts to justify his refusal by stating that the restoration offer was to a new job rather than his former position. Whatever the merits of this contention may be, certainly were the agency in error, plaintiff should have gone to work, advised the agency of its alleged improper action, and given it an opportunity to correct the situation. This he did not do. Instead, he repeatedly refused restoration unless the agency met his demand for back pay, and in this respect no statute or regulation is cited which would authorize such payment.
Thus, since plaintiff does not have the Lloyd-LaFollette Act benefits, was not discharged or restored under the 1950 Security Act, supra, and is not equitably entitled to judgment for back pay, plaintiff’s petition must be dismissed and judgment will be entered to this effect.
Davis, Judge; DttReee, Judge; Whitaker, Judge; and Jones, Chief Judge, concur.
FINDINGS OE FACT
The court, having considered the evidence, the report of Trial Commissioner Mastín G. White, and the briefs and argument of counsel, makes findings of fact as follows:

Introductory Statement

This is a pay case filed by a former civilian employee of the Army Corps of Engineers in Alaska. The plaintiff contends that he is a veteran and that he was not accorded proper treatment by the Corps of Engineers in connection with the handling of charges which the agency preferred *406 against him on tbe ground that he allegedly had falsified his application for employment.
It was agreed by the attorneys for the parties, with the approval of the commissioner, that the initial submission of the case to the court would be on the issue of liability only, with the question of the amount of recovery and the amount of offsets, if any, being reserved for further proceedings under Rule 38(c).
1. The plaintiff, John A. London, is an experienced construction engineer. At all times pertinent to this litigation, the plaintiff was, and he is now, a citizen of the United States. His legal residence at the present time is Seattle, Washington.
2. (a) The plaintiff, who was 20 years of age at the time and residing in Hawaii, voluntarily enlisted in the United States Naval Reserve on November 8, 1944. Immediately upon his induction into the Naval Reserve on the date mentioned, the plaintiff was placed by the Navy “in an inactive duty status without pay and allowances” contingent on his continued “employment at a Naval Activity.”
(b) The plaintiff was never ordered to active duty by the Navy; he never performed any active service under his enlistment (other than participating in the induction ceremony) ; and he never received any pay or allowances from the Navy under his enlistment.
(c) The plaintiff was given an honorable discharge by the Navy as of September 27, 1945. The document effecting the discharge stated (among other things) as follows:
Has NOT performed any active duty. Is NOT entitled to any pay or allowances on discharge.
3. On June 26, 1950, the plaintiff submitted to the Alaska District of the Army Corps of Engineers an application for employment on Standard Form 57. In his application, the plaintiff (among other things) answered “No” to the question, “Since your 16th birthday, have you ever been arrested, indicted, or summoned into court as a defendant in a criminal proceeding, or convicted, fined, or imprisoned or placed on probation, or have you ever been ordered to deposit bail or collateral for the violation of any law, police regulation or *407 ordinance (excluding minor traffic violations for which, a fine or forfeiture of $25 or less was imposed.) ?”
4. The plaintiff was employed in an excepted civilian position by the Alaska District of the Corps of Engineers on July 6,1950. Thereafter, he was continuously employed by the Alaska District in excepted civilian positions as engineer aide, electrical engineer, construction engineer, and construction inspector until his dismissal under the circumstances related in subsequent findings.
5. At the time of the plaintiff’s employment by the Alaska District of the Corps of Engineers, the officials of that District included a security officer and a personnel officer. It was the customary practice when a new civilian employee entered the service for his employment papers to be turned over to the security officer, who checked with various investigative agencies of the Government in order to ascertain whether their files contained any information of a derogatory nature relative to the new employee; and if the security officer obtained any information of a derogatory nature regarding the new employee, such information was customarily referred by the security officer to the personnel officer for a determination as to whether the new employee was suitable for retention in the service of the Government. Shortly after the plaintiff’s employment by the Alaska District of the Corps of Engineers, the customary investigative check concerning him was made by the security officer; and, as a result, the security officer obtained information which indicated that the plaintiff had been arrested while living in Hawaii. However, the security officer did not follow the usual practice by referring this information to the personnel officer. Instead, the information was merely placed in the files of the security officer.
6. In about April 1954, the personnel officer of the Alaska District, Corps of Engineers, assumed the dual role of personnel officer and security officer. In reviewing the files which had been assembled by the former security officer, the personnel officer-security officer discovered the information indicating that the plaintiff had been arrested while living in Hawaii.
*408 7. In the early part of May 1954, the personnel officer-security officer of the Alaska District, Corps of Engineers, had a conference with the plaintiff and discussed the information which had been discovered in the security files relative to the plaintiff having been arrested in Hawaii. The plaintiff admitted that he had been arrested.
8. At the time of the conference mentioned in finding 7, the plaintiff held a position as construction engineer (electrical installation), in grade GS-9, with an annual salary of $5,435 plus a 25 percent territorial differential amounting to $1,358.75 per annum, or a total annual salary of $6,793.75. This was a sensitive position, and the plaintiff had the necessary security clearance to hold such a position.
9. As the derogatory information concerning the plaintiff had been held by the Alaska District for several years without action, and as the plaintiff in the meantime had made a good record as an employee of the Alaska District, it was concluded by the officials of the District in early May 1954 that no action looking toward the dismissal of the plaintiff should be taken on the ground of the falsification of his application for employment. Instead, it was decided that the plaintiff would be afforded an opportunity to correct his application for employment, and that he would be retained in the service, but that his security clearance would be withdrawn. The proposed course of action was made known to the plaintiff. It was explained to the plaintiff that the withdrawal of his security clearance would make it necessary to transfer him to a nonsensitive position, and that all the GS-9 positions in the Alaska District which the plaintiff was technically competent to fill were sensitive positions, but that there was available a nonsensitive GS-7 position as a construction inspector to which the plaintiff would be transferred. The plaintiff acquiesced in the proposed disposition of the matter.
10. On May 7, 1954, the plaintiff submitted a corrected Standard Form 57 to the personnel officer-security officer. On this form, the plaintiff answered “Yes” to the question quoted in finding 3 relative to arrests, etc., and he gave the *409 following information in connection with the answer: “Feb. ’48, 2nd degree Rob. Circuit Court, Acquitted.”[1]
11. A communication dated May 10,1954, from the Office of the District Engineer to the plaintiff stated in part as follows:
1. The matter of your falsification of employment forms in applying for work with the Alaska District has been thoroughly reviewed, and decision reached, to retain you on the rolls of the District as long as a clearly identifiable Non-Sensitive position may be established, which is within your qualification background.
2. Normally, falsification of records, to the extent in your case, would result in immediate dismissal. In view, however, of lack of administrative action for a four year period, during which time you have rendered satisfactory service to the Alaska District, leniency has been extended.
12. On May 11, 1954, the plaintiff signed the following statement and delivered it to the personnel officer-security officer:
It is requested that I be changed from: Construction Engineer (Electrical Installations), Position No. 1708, GS-850-9, Step 4, to Construction Inspector (A.P.) #2523, GS-1871-7, Step 7.
30 days notice is waived.
13. On June 2,1954, the plaintiff was transferred from the sensitive GS-9 position which he had previously occupied (see finding 8) to a nonsensitive position as construction inspector, GS-7, with a salary of $4,955 per annum plus the 25 percent territorial differential. The plaintiff’s security clearance was withdrawn at about the same time.
14. In 1955, most of the excepted positions in the Alaska District, Corps of Engineers, and the persons occupying such positions were blanketed into the competitive civil service system. However, the plaintiff (along with approximately 20 other employees) was retained “in Status Quo.” The reason for this action in the plaintiff’s case was stated as fol *410 lows: “Does not meet full requirements for recommendation for conversion.” The evidence indicates that the plaintiff’s record with the Corps of Engineers was good, and that he would have been blanketed into the competitive civil service system in 1955 but for the derogatory information mentioned in findings 5-11.
15. In 1955, the Alaska District, Corps of Engineers, initiated an investigation to verify the data furnished by the plaintiff in his corrected Standard Form 57 (see finding 10). Also, it was the intention of the District, in the light of the information obtained as a result of the investigation, to reevaluate the decision that had been made in 1954 to withdraw the plaintiff’s security clearance. During the course of the 1955 investigation, there was obtained additional information which led the District to believe that the plaintiff had been arrested in Hawaii on November 15,1948, for first degree robbery and on December 28,1948, for embezzlement. No such arrests were mentioned by the plaintiff in his corrected Standard Form 57.
16. On or about May 7, 1956, the plaintiff was served by the Office of the District Engineer with a notice of proposed removal, which stated in part as follows:
1. This is to advise you that it is proposed to remove you from the rolls of the Alaska District, effective 11 June 1956, under provisions of CPE S 1.4, Para 4 — 2a, for your willful action in deliberate falsification of records, after every opportunity had been afforded you to correct employment records filled out at time of hire.
2. This proposed adverse action is being taken for the following reasons:
(a) On 10 May 1954, the matter of your falsification of employment forms was the subject of a lengthy discussion confirmed by letter to you on the same date. At that time, you submitted a corrected SF 57, Application for Federal Employment. However, it has now been disclosed that you failed to show on this corrected SF 57, two arrest records:
15 November 1948 — First Degree Eobbery — Honolulu, T.H.
23 December 1948 — Embezzlement—Honolulu, T.H.
(b) This can only be construed as willful and deliberate falsification, in view of the fact that you could not fail to understand the seriousness of the discussion *411 of 10 May 1954, and the necessity for absolute honesty on your part in submitting a corrected SF 57.
# * H* ❖ *
4. You have the right to reply to this notice of proposed adverse action personally and in writing, within 10 calendar days from receipt of this letter. Your reply should be addressed to Personnel Officer, District Engineer, Alaska District. Full consideration will be given to your reply and you will be advised in writing of final decision.
17. Paragraph 4-2 of Section 4 of Civilian Personnel Regulations S1.4 (1; August 1955), to which reference was made in the communication quoted in finding 16, provided as follows:
REMOVAL

Definition

4 — 2. a. “Removal” is the action used in separating an employee on charges of delinquency or misconduct.

Use of Action

6. Removals are appropriate for use when the grounds for separation are based upon an employee’s willful actions or upon carelessness or negligence beyond reasonable excuse. The action should be applied when the circumstances warrant, without regard to whether the employee occupies a position in the competitive or excepted service or whether he is serving a probationary or trial period, or under a career, career-conditional, temporary, or excepted appointment. It should be recognized that employees who are removed from their positions also may be denied other employment on those grounds. The greatest care and judgment must therefore be applied in effecting the action. Removal actions are not appropriate for separating employees for physical or mental deficiencies or for improper duty performance without gross negligence or carelessness. The removal procedures outlined herein will not be used to separate an employee when the action is based upon reasons of disloyalty or security as discussed in paragraph 4-16.

Effeoti/oe Date

c. Removals will not be made effective until the expiration of the advance notice prescribed in paragraph *412 4 — lei and appendix B, nor prior to the date the employee has received notice of the adverse decision.
18. At the time of the issuance of the notice of proposed removal referred to in finding 16, the plaintiff occupied an excepted position as construction inspector, GS-7, in the Alaska District, Corps of Engineers, and was stationed at the Elmendorf Air Force Base.
19. The plaintiff replied on May 17, 1956. to the notice of proposed removal mentioned in finding 16. In his reply, the plaintiff stated in part as follows:
The alleged arrests cited in paragraph 2, sec. (a) of your letter never occurred. While it is true that I was arrested, stood trial, and was found not guilty of First Degree Robbery charges, it was not on 15 November 1948. Also, this arrest was set forth on the revised SF 57 that I was allowed to submit in May 1954. Attached is a copy of Navy Orders dated 7 Sept. 1948. Within 80 days after receipt of these orders I departed from Hawaii and have not returned since.
* % % * *
I am sure you will agree that in view of the six years of credible [sic] service that I have with the Alaska District, and upon evaluation of all facts, that the proposed removal action would not be warranted.
20. A letter dated June 6,1956, from the Office of the District Engineer to the plaintiff stated in part as follows:
In view of your contention that the arrest record specified in paragraph 2a of our letter of proposed removal could not be correct in view of the fact that you departed from Hawaii to the United States prior to the date of these specified arrests, and did not return to Hawaii subsequent to your date of return to the United States, the validity of your contentions will be verified by further official investigation.
The notice period of your proposed removal is extended until such time as further investigation is completed.
During this extended notice period you will resume your normal work assignment; however, if you so elect you may take annual leave or leave without pay for any part or all of this period.
*413 21. In accordance with the final paragraph of the communication quoted in finding 20, the plaintiff elected in September 1956 to take leave during the pendency of the proceedings which had been instituted against him by the Alaska District, Corps of Engineers. Accordingly, the plaintiff began taking his accumulated annual leave on September 26, 1956. At about that time, the plaintiff moved with his family from Alaska to Seattle, Washington. The plaintiff paid his own personal traveling expenses, but the Corps of Engineers defrayed the cost of moving the plaintiff’s family and household effects to Seattle.
22. (a) On December 12,1956, the plaintiff, who was then in Seattle, wrote a letter to the District Engineer in Alaska, stating in part as follows:
As my annual leave expires on 2 January 1957, would you please consider this letter as a request for an extension of this leave on an LWOP basis. This additional leave would be for 680 hours and would elapse approximately 1 May 1957.
(b) The District Engineer informed the plaintiff in reply that “Leave without pay to 1 May 1957 approved.”
23. (a) A letter dated April 14,1957, from the plaintiff in Seattle to the District Engineer in Alaska stated in part as follows:
Eef erence is made to * * * letter * * * dated 6 June 1956. This letter authorizes my LWOP status, “.. . until such time as further investigation is completed.”
Apparently this investigation has not yet been completed and my approved LWOP expires on 1 May 1957. Pursuant to the authority contained in the aforementioned letter, please consider this letter as a request for additional LWOP until this matter is resolved.
As I am currently attending the University of Washington on a full-time basis I am sure that you can understand my reluctance to withdraw from the university and return to Alaska with my family while the possibility of removal exists. I firmly believe that in fairness to the Government and to myself, I could not efficiently perform my work assignment with the threat of dismissal pending.
*414 (b) The plaintiff was informed by the Office of the District Engineer on May 1, 1957, that “leave without pay extension granted not to exceed 30 Juné 1957.”
24. The plaintiff’s leave without pay was subsequently extended further by the Office of the District Engineer in Alaska until August 27,1957.
25. Under the date of August 20, 1957, the District Engineer addressed to the plaintiff in Seattle another notice of proposed removal. This notice stated as follows:
1. On 6 June 1956 you were advised by letter from this office, that in view of your contention that the arrest record specified in paragraph 2.a. of our letter of proposed removal dated 7 May 1956, could not be correct, the notice period of your proposed removal would be extended until such time as further investigation could be completed. This investigation has now been completed with conclusive evidence that you did in fact fail to disclose two arrest records when given the opportunity to submit a corrected application for federal employment.
2. This is to advise you that it is proposed to remove you from the rolls of the Alaska District effective 30 days after receipt of this letter.
3. The specific charges in support of this proposed action are set forth below:
•a. On 10 May 1954, the matter of your falsification of employment forms was the subject of a lengthy discussion confirmed by letter to you on the same date. At that time you submitted a corrected SF-57, Application for Federal Employment. However, investigation discloses that you failed to show on this corrected SF-57 two arrest records as follows:
15 November 1948 — Gross Cheat, First Degree, Honolulu, T.H.
23 November 1948 — Embezzlement, Honolulu, T.H.
b. This can only be construed as wilful and deliberate falsification, in view of the fact that you could not fail to understand the seriousness of the discussion of 10 May 1954, and the necessity for absolute honesty on your part in submitting a corrected SF-57.
4. It is therefore proposed to remove you from the rolls of the Alaska District on the date specified in paragraph 2, for deliberate falsification of records.
5. You have the right to reply to this notice of proposed adverse action personally, and in writing, within *415 ten (10) calendar days from receipt of this letter. Your reply should be addressed to the District Engineer, U.S. Army Engineer District, Alaska, Corps of Engineers, Box 1288, Anchorage, Alaska, Attention: Personnel Officer. Full consideration will be given to your reply and you will be advised in writing of final decision.
6. You will 'be retained in your present leave without pay status prior to date of proposed separation or you may elect to return to active duty status for any or all of this notice period.
26. On August 27,1957, the plaintiff, who had returned to Alaska, wrote a communication to the Office of the District Engineer, stating in part as follows:
2. You are hereby advised that my reply to the specific charges outlined in your letter as basis for removal, will be forthcoming within 10 calendar days from receipt of this letter. You are further advised that I elect to return to active duty status as authorized in paragraph 6 of subject letter for the entire notice period.
27. The plaintiff returned to active duty in his position as construction inspector, GS-7, at the Elmendorf Air Force Base on August 27,1957.
28. A detailed answer to the notice dated August 20,1957, from the Office of the District Engineer (see finding 25) was submitted by the plaintiff under the date of August 30,1957. The plaintiff’s answer concluded with a request that he be afforded a hearing on the charges that had been preferred against him.
29. On or about September 20, 1957, the plaintiff was served with a “Notice of Decision” by the Office of the District Engineer. This notice stated in part as follows:
2. A careful review has been made of your answers to the charges. It is clear that you did deliberately falsify a Standard Form 57, “Application for Federal Employment” dated 7 May 1954, by omitting two arrest records, after being given an opportunity to submit a corrected SF-57. Despite the difficulty encountered in obtaining the. correct dates of arrest, it is established that you omitted any mention of these two arrests on the above mentioned corrected SF-57.
3. Your request for an informal hearing is denied since the facts in this matter are firmly established by documentary evidence, contrary to your contention that our *416 charge is based upon parol evidence. Therefore, this is to notify you of the decision to effect your removal at close of business 27 September 1957.
4. You have the right to request review of this decision under the Grievance Procedure in Civilian Personnel Regulation E2 anytime from receipt of this notice up to but not later than ten (10) work days after the effective date of this action. Any appeal should be directed to “District Engineer, U.S. Army Engineer District, Alaska, Corps of Engineers, Anchorage, Alaska, Attention : Personnel Branch.”
30. The effective date of the plaintiff’s removal was subsequently changed to the close of business on October 2,1957, “in order to allow time for your return travel to your point of hire.”
31. The plaintiff left Alaska and went to Seattle, Washington, in late September or early October 1957. His traveling expenses were paid by the Corps of Engineers.
32. On October 5, 1957, in accordance with paragraph 4 of the communication quoted in finding 29, the plaintiff in Seattle took action to secure a review by a Grievance Committee of the decision made by the Office of the District Engineer on September 20, 1957.
33. (a) A Grievance Committee established by the Alaska District, Corps of Engineers, held a hearing at Anchorage, Alaska, on November 18,19, and 20,1957, in connection with the plaintiff’s case. The plaintiff was given advance notice of the hearing, but he was in Seattle and did not go to Alaska for the hearing. The plaintiff requested the Corps of Engineers to provide transportation for him from Seattle to Anchorage in order that he might appear before the Grievance Committee, but the agency refused to do so.
(b) Various officials of the Alaska District appeared and testified before the Grievance Committee. The security officer and personnel officials of the District testified that the plaintiff load been downgraded from a GS-9 position to a GS-7 position on the ground that his continued assignment in the former position “was not consistent with the best interests of security”; that the alleged derogatory matter against the plaintiff had been uncovered as a result of a reexamination and readjudication of cases under depart *417 mental directives implementing Executive Order 10450; and that tbe investigation had raised a question of the plaintiff’s suitability under the criteria of Executive Order 10450.
(c) The Grievance Committee, after the hearing, recommended to the District Engineer that the action of removal be sustained.
34. In a communication dated December 11,1957, and addressed to the plaintiff in Seattle, the District Engineer informed the plaintiff (among other things) that:
* * * [I]t is my decision to accept the recommendations of the Grievance Committee that the action of removal be sustained.
You are entitled to request a review of this decision only by specifically showing why you feel the decision does not conform to law or is contrary to Department of the Army policy, or that the decision clearly is contrary to evidence of record, or there has been a denial of fair hearing or other procedural rights which effectively precluded adequate presentation of your case.
A request for review must be made in writing within ten working days after receipt of this decision and must state specifically the basis for the request. Such a request for review should be addressed to the District Engineer, U.S. Army Engineer District, Alaska, P.O. Box 1288, Anchorage, Alaska. Such a request for review will be forwarded to an appropriate review level.
35. By means of a letter dated December 16, 1957, the plaintiff took action to secure a review by higher authority of the District Engineer’s decision referred to in finding 34.
36. The Alaska District was part of the North Pacific Division of the Corps of Engineers. Therefore, in accordance with the procedure prescribed for the handling of removal cases that involved alleged delinquency or misconduct, the plaintiff’s request for review was considered, and the record relating to his removal was reviewed, by the North Pacific Division Special Board of Beview. That board concluded, and reported to the Division Engineer in charge of the North Pacific Division, that the charges against the plaintiff were not substantiated by the facts in the record.
37. (a) On June 30, 1958, the Division Engineer in charge of the North Pacific Division, Corps of Engineers, sent a communication to the District Engineer in Alaska, and on *418 the same date be sent a communication to tbe plaintiff in Seattle (transmitting it through the District Engineer).
(b) The Division Engineer’s communication to the District Engineer was as follows:
1. Subject appeal assembly of Mr. John A. London has been reviewed by the North Pacific Division Special Board of Review in accordance with the provisions of CPR. E2.6. The Board’s decision is that the charges against subject employee are not substantiated by the facts of record. I concur in the Board’s decision. Accordingly, the necessary remedial action will be taken to reinstate Mr. London and this office will be notified when this has been accomplished.
2. There is attached a letter to Mr. London informing him of this action.
(c) The Division Engineer’s communication to the plaintiff (through the District Engineer) was as follows:
1. Review of the assembly record in the matter of your separation from employment as a Construction Inspector, GS-7, with the U.S. Army Engineer District, Alaska, has now been completed, and you are notified that the removal action has not been sustained.
2. Immediate action will be taken by the Alaska District office relative to your restoration.
38. The Office of the District Engineer in Alaska forwarded to the plaintiff in Seattle the communication of June 30, 1958, from the Division Engineer to the plaintiff (see finding 37 (c)), together with a covering communication from the Office of the District Engineer dated July 25, 1958, stating as follows:
1. Reference letter from the Division Engineer, North Pacific Division, stating that your removal was not sustained and that action be taken for your restoration.
2. You previously occupied a Construction Inspector (AP), GS-1930-7 position in the Construction Division. Due to a reorganization all inspectors are now assigned to the Project and Resident Engineer Offices. Therefore you are offered restoration to a Construction Inspector (General), GS-1930-7 position in the Fort Richardson Residency.
3. You are advised that you are not entitled to back pay and that your restoration will be to a new appointment as of a current date.
*419 4. Please advise this office at your earliest convenience regarding your plans for return to duty.
39. On August 4, 1958, the plaintiff wrote a letter to the Comptroller General of the United States, asking whether “legal authority exists for the payment of my back-pay under the circumstances” pertaining to the removal of the plaintiff from his position and the subsequent offer of restoration made by the Office of the District Engineer.
40. The plaintiff on August 28,1958, replied to the Division Engineer’s letter of June 30, 1958 (see finding 37(c)), and stated in part as follows:
I received a copy of your letter and an offer of restoration in a registered letter from The District Engineer, Alaska District, dated 25 August 1958. This restoration offer states that I would be given a new appointment and that I am not entitled to back pay.
* * * * *
* * * I feel that the restoration offer by the Alaska District is a meaningless gesture lacking justice and equity and violates the intent of your directive of 30 June 1958.
41. On September 15, 1958, the plaintiff wrote a letter to the District Engineer in reply to the latter’s communication of August 25,1958 (see finding 38). The plaintiff stated in part as follows:
Your determination that I am not entitled to back pay, despite your illegal action in this matter, is not acceptable. Your offer of restoration remains a meaningless gesture, incompatible with justice or equity.
You are hereby advised that I will return to duty at such time that my restoration, complete with back pay and other benefits, is effected. In the event that these conditions are not met expeditiously, a Declaratory Judgment will be sought in Federal Court.
42. The Office of the District Engineer replied to the plaintiff’s letter of September 15, 1958 (see finding 41) on September 18,1958, and stated as follows:
Eeference is made to your letter of 15 September 1958. The entire file of the hearing and related correspondence has been forwarded through channels to Office, Chief of Engineers. No further action concerning your restora *420 tion will be taken until a decision has been received from the Comptroller General’s Office.
43. (a) On November 5, 1958, the General Accounting Office wrote a letter to the plaintiff, stating in part as follows:
Your claim for compensation subsequent to your separation from your position with the Corps of Engineers in Alaska to date of restoration, is disallowed for the reasons stated below.
$ $ $ H> *
As you were a non-veteran and not in the classified competitive service at the time of your suspension the back pay benefits of the Act of June 10, 1948, cannot be extended to you. Nor are we aware of any law extending such benefits to the present situation. Accordingly, there is no legal basis upon which payment can be made to you for the compensation lost on account of your removal from duty.
(b) The General Accounting Office subsequently reaffirmed its position in a communication to the plaintiff dated September 10, 1959. This action was taken pursuant to a request from an attorney representing the plaintiff that the previous denial of the plaintiff’s claim be reconsidered by the General Accounting Office.
44. (a) The plaintiff never resumed his employment with the Corps of Engineers. Instead, he instituted the present action in the Court of Claims on April 25,1960.
(b) If the plaintiff had accepted the reinstatement that was offered to him in July 1958 (see findings 37 and 38), he would subsequently have been separated from the service or reassigned as a result of a reduction in force that occurred in the Alaska District of the Corps of Engineers in December 1960. At that time, there was a general reduction in force due to decreased construction work, which greatly reduced the number of construction inspectors employed in the Alaska District.
45. The plaintiff concedes that he is not entitled to the back-pay benefits provided for in the Lloyd-La Follette Act (5U.S.C. 652).
46. The Corps of Engineers, in taking the various administrative steps pertaining to the plaintiff’s removal from his *421 position as construction inspector and the subsequent review of such removal, followed the procedures prescribed in the pertinent Civilian Personnel Eegulations governing removal cases based on alleged delinquency or misconduct.
CONCLUSION OK LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover and the petition is dismissed.

 TMs was a discretionary action on the part of the agency, and the facts disclose no abuse thereof. Consequently, that action, cannot be held to he unreasonable or arbitrary.

 On the corrected form, the plaintiff answered “Yes” to the question, “Have you ever been discharged, or forced to resign, for misconduct or unsatisfactory service from any position?” This question had been answered “No” on the original application.