# UNITED STATES *v.* WICKERSHAM.

## APPEAL FROM THE COURT OF CLAIMS.

No. 185. Submitted February 28, 1906.—Decided April 2, 1906.

The provisions of the Civil Service Act of January 16, 1883, are broad and comprehensive; under it, the Executive order of May 16, 1896, Rule III, and the order and list of the Secretary of the Interior of June 9 and September 26, 1896, based thereon, stenographers receiving the specified salaries employed in offices of surveyors-general were brought within the protection of the law and can only be removed—at least by a subordinate officer of the Department—for just cause and upon written charges on notice with opportunity to defend; and until removed in accordance with the law and rules thereunder, and so long as he remains ready and willing to discharge the duties of his place, he cannot be deprived of the compensation legally belonging to one entitled to hold the position notwithstanding the surveyor-general in whose office he is employed attempts to discharge him and excludes him from the office.

THE facts are stated in the opinion.

*Mr. Louis A. Pradt,* Assistant Attorney General, and *Mr. Felix Brannigan,* Assistant Attorney, for the United States:

It is unnecessary to present any argument as to whether or not Wickersham was or was not in the classified civil service

of the United States within the intention of the act approved January 16, 1883. 22 Stat. 403. The act and the orders or regulations prescribed under it did not place Wickersham in the position of a salaried officer of the United States holding an office with unlimited tenure; and therefore that, whether he was rightfully or wrongfully dismissed (suspended)—that is to say, refused to be continued in employment by the surveyor-general for Idaho—he was not entitled to a judgment for any salary or compensation after November 1, 1897.

The civil service law is not in conflict with the principles of the law of master and servant. Under the latter law no dismissed employé could recover a valid judgment against his employer under the circumstances of the present case. The civil service law does not contemplate that such an employé as Wickersham shall be permanently employed, nor that he shall not be dismissed (suspended) from employment at any time by the officer who had the authority to employ him, even when that officer erroneously assumed that he did not need the services of the employé.

No person can be appointed to an office in the service of the United States except by the President, or the head of a Department, or a court, and the "salary" of the office must be fixed by law or by a regulation authorized by law. There is nothing in the record showing that appellee was ever employed or hired by any surveyor-general for any definite time, or that he ever held an office of the United States, or was ever entitled to the salary of such an office.

*Mr. William R. Andrews* and *Mr. Samuel D. Luckett,* for appellee:

The power to remove does not include the power to suspend an officer. Mecchem's Public Officers, § 453; Throop on Public Officers, §§ 402, 404; *State* v. *Jersey City,* 25 N. J. L. 536; *Gregory* v. *Mayor,* 113 N. Y. 416; *Bovee* v. *Herron,* 24 La. Ann. 595.

The rules of the civil service declared upon what grounds

and in what mode the appellee might be removed, and it was beyond the power of any superior officer to remove or suspend him for any other reason or in any other mode. *Keech* v. *Thompson,* 94 N. Y. 459; *Commonwealth* v. *Shaver,* 3 W. & S. 344; *Lowe* v. *Commonwealth,* 3 Met. (Ky.) 241. See also *Auditor* v. *Hardin,* 8 B. Monroe, 672; *Dennison* v. *St. Louis,* 90 Missouri, 22; *Field* v. *Commonwealth,* 32 Pa. St. 483; *Foster* v. *Kansas,* 112 U. S. 205; *Kennard* v. *Morgan,* 92 U. S. 483; *Kennedy* v. *McGarry,* 21 Wisconsin, 497; Throop on Public Officers, § 364; *Willard's Appeal,* 4 R. I. 595; *Gorman* v. *Board of Police,* 3 Abbott, 488; *Perkins* v. *United States,* 20 C. Cl. 443.

The appellee having been illegally suspended, and the officer having jurisdiction of him as an employé having annulled such suspension, he is entitled to his salary during the time of such suspension. Throop on Public Officers; *State* v. *Carr,* 3 Mo. App. 6; *Fitzsimmons* v. *Brooklyn,* 102 N. Y. 536; *Andrews* v. *Portland,* 79 Maine, 484; *Bailey* v. *State,* 56 Mississippi, 637; *Mayor* v. *Woodward,* 12 Heisk. (Tenn.) 499; *People* v. *Brennan,* 30 How. Pr. (N. Y.) 417; *Dorsey* v. *Smith,* 28 California, 21.

Appellee having been suspended—not removed, is entitled to his salary, irrespective of the legality of his suspension. *Sleigh* v. *United States,* 9 C. Cl. 375. See also *Chisolm* v. *United States,* 27 C. Cl. 97; Throop on Public Officers, § 500; *Emmitt* v. *The Mayor, etc., supra.*

Where an officer has been prevented from performing the duties of his office he is entitled to his salary. *Fitzsimmons* v. *Brooklyn,* 102 N. Y. 536; *Adams* v. *Justices,* 21 Georgia, 206; *Savage et al.* v. *Pickard,* 82 Tennessee, 46.

MR. JUSTICE DAY delivered the opinion of the court.

The appellee brought suit in the Court of Claims to recover upon an alleged claim for compensation at the rate of $1,100 per annum, from November 1, 1897, to July 1, 1902, and averred that he was a clerk in the office of the United States

surveyor-general in Boise, Idaho, in the classified civil service, from which employment on said first-mentioned date, he was suspended, without fault of his own or just cause. He stated his readiness to discharge the duties of the office and set forth in detail what he claimed amounted to a wrongful suspension therefrom by the United States surveyor-general of the State of Idaho. The finding of facts is quite voluminous, and it is unnecessary to set it all out in detail. The facts pertinent to the decision of this case may be summarized as follows: Several years prior to May 6, 1896, claimant was employed as a clerk, stenographer and typewriter in the office of the surveyor-general of the United States for the State of Idaho, at a salary of $1,100 per annum. On that date the President of the United States made and promulgated an order relating to the civil service, which provided, among other things:

"Rule III.

"1. All that part of the executive civil service of the United States which has been, or may hereafter be, classified under the civil service act shall be arranged as follows: The Departmental Service. . . .

"2. The Departmental Service shall include officers and employés as follows:

\*      \*      \*      \*      \*      \*      \*      \*

"(b) All executive officers and employés outside of the District of Columbia not covered in (a), of whatever designation, whether compensated by fixed salary or otherwise—

"Who are serving in a clerical capacity, or whose duties are in whole or in part of a clerical nature."

On June 9, 1896, the Secretary of the Interior issued the following order:

"Civil Service Classification of Officers and Employés.

"Department of the Interior,
"Washington, June 9, 1896.

"By direction of the President of the United States, and in accordance with the third clause of section 6 of the act entitled

'An act to regulate and improve the civil service of the United States,' approved January 16, 1883:

"It is ordered, That the officers and employés in or under this Department included within the provisions of the civil service law and rules be, and they are hereby, arranged in the following classes:

"Class E, all persons receiving an annual salary of $1,000 or more, or a compensation at the rate of $1,000 or more, but less than $1,200 per annum. . . ."

On September 22, 1896, the Acting Secretary of the Interior communicated to the Civil Service Commission the names of the incumbents, with their legal residences, and the dates of appointment, added to the classified departmental service by the extension of May 6, 1896, also inclosing a similar list of such positions and employés in the offices of the surveyor-general, which contained the name of the appellee with his title, "stenographer and typewriter," date of appointment, salary, residence and class. The appellee was verbally informed by the surveyor-general of his selection, and, after executing the prescribed oath, entered upon his duties. At the time of his employment the custom was to allow the surveyor-general to select the clerical force of his office. Appellee was continuously employed as such stenographer and typewriter until November 1, 1897, on which date he was suspended from service by the surveyor-general. No charges in writing or orally were preferred against him, the surveyor-general basing the suspension on the ground that appellee's services were not needed on account of lack of work to be done. On November 15, 1897, the surveyor-general reported to the Commissioner of the General Land Office an accumulation of mineral work, the employment of certain clerks by himself, with the request for additional clerical force. On November 22, 1897, the Commissioner of the General Land Office advised the surveyor-general that the ground taken that certain persons were dismissed because there was no further occasion for their services and the appointment of other persons in their places could not

be sustained. On February 24, 1898, the Commissioner of the General Land Office, in reply to a letter from the surveyor-general under date of February 21, 1898, in which he had asked authority to employ two additional draftsmen and four transcribing clerks, to be paid from the funds reported as available, said: "No authority can be given you to employ the additional force desired, except as provided under the civil service rules. I am constrained to say that but for your summary action in dispensing with so many of your employés, in violation of the law governing such matters, the difficulties in dispatching the work of your office would not have prevailed to such an extent." On May 14, 1898, the Commissioner advised the Civil Service Commission as follows: "Referring to my request of the 20th ult., for a certificate of a list of eligibles for appointment as stenographer and typewriter, at $900, in the office of the surveyor-general of Idaho, I have been informed that an examination was recently held by your Commission in said State for persons possessing the required qualifications, and it is urgently requested that as soon as possible this office may be furnished with a certificate from those citizens of Idaho who are eligible for the place desired to be filled under my call of the 20th ult., as the surveyor-general reports that his work is much impeded and embarrassed for the lack of a competent stenographer." On June 15, 1898, the President of the Civil Service Commission addressed a communication to the Secretary of the Interior, in which he said: "In this connection the Commission invites your attention to the fact that although surveyor-general Perrault suspended the above-named employés (Lellman and Wickersham) and three others (D. J. Cohen, Joseph P. Chinn and Alice S. Howey) over seven months ago, on the alleged ground of lack of work (which has been effectually disproved), these persons still remain separated from the service, while others occupy the positions to which they are properly entitled." Since November 1, 1897, claimant has not been permitted to perform the duties of stenographer and typewriter in said office, although after

said date he stood ready and willing to discharge the duties thereof, and he has received no compensation from the United States since October 31, 1897. On November 5, 1897, he protested against his suspension, and on December 28, 1897, he demanded his salary. On January 1, 1899, he assumed office as district clerk of Ada County, Idaho, and served for one year. On April 9, 1898, the Commissioner of the General Land Office directed the reinstatement of the clerks whose places had not been permanently filled, among others naming the appellee, and directed the surveyor-general to prefer formal charges against such persons as he had reported for inefficiency, etc., and to hand a copy of the charges and a copy of the order to each of the clerks and give them three days within which to make a response. In pursuance of this instruction the surveyor-general on April 16, 1898, preferred charges against the appellee, and on the same day reinstated him. On May 10, 1898, the Commissioner of the General Land Office advised the surveyor-general that the appellee would be reinstated in the service of the bureau, as his continuance in the surveyor-general's office would not be harmonious and in the best interests of the public service. On the same day he was offered a position in Washington at $1,000 per annum, without transportation, which he declined. He was offered the alternative of accepting a position in the General Land Office in Washington at a reduced salary, or to await the occurrence of a vacancy elsewhere, but he has not since been offered a position elsewhere in the service. On August 8, 1898, the Commissioner of the General Land Office made appellee's suspension permanent. The Court of Claims rendered a judgment in favor of the appellee for the amount of his compensation from the first of November, 1897, from which date, it was found, he was wrongfully suspended, until May 10, 1898, when his services in the office of the surveyor-general were discontinued and he was offered a position in the bureau at Washington, which he declined.

It is the contention of the Government that Wickersham was not an official appointee of the President or the head of

a Department, but was merely an appointee of the surveyor-general, without definite employment and subject to removal at the will of that officer. The employment of the appellee is alleged to be no different than the ordinary engagement of master and servant, and it is urged that the attempted suspension by the surveyor-general was tantamount to dismissal by an employer of one who was engaged without definite term and subject to dismissal at any time.

The provisions of the act of Congress of January 16, 1883, to regulate and improve the civil service of the United States, 1 Supp. Rev. Stat. 392, are broad and comprehensive. By section 6 of the act the power is conferred upon the President of the United States to require the heads of Executive Departments to classify for the purposes of the act and the examination therein provided for, and to include in one or more of said classes, so far as practicable, subordinate places, clerks and officers in the public service pertaining to their respective departments, not before classified for examination. The order of the President of May 6, 1896, Rule III, provides that the departmental service classified under the act should include officers and employés, among others, "All executive officers and employés outside the District of Columbia . . . of whatever designation, whether compensated by fixed salary or otherwise, who are serving in a clerical capacity, or whose duties are in whole or in part of a clerical nature." In accordance with the statute and under the provisions of this order the Secretary of the Interior, on June 9, 1896, made an order classifying the officers and employés of his Department, Class E, including persons receiving $1,000 or more of salary, or compensation at the rate of $1,000 or more, but less than $1,200 per annum. On September 26, 1896, under the extension order referred to and the action of the Secretary of the Interior, the Acting Secretary of the Interior filed a list of positions and employés with the Civil Service Commission, which, among others, in the list of employés in the offices of surveyors-general, contained the name of the appellee as a stenographer

and typewriter, the date of his appointment, salary and residence, as stated in the findings of fact. By the action recited on the part of the President and the head of the Department of the Interior, Wickersham was brought within the protection of the law and the President's order afforded to persons duly entered in the classified civil service. While he may not technically have been an officer of the United States with a fixed term and compensation, he certainly was within the subordinate places provided for in the statute; and within the "employés outside the District of Columbia," covered by the President's order of May 6, 1896. That order expressly included officers and employés, whether compensated by a fixed salary or otherwise, serving in a clerical capacity or whose duties were in whole or in part of a clerical nature. The Secretary of the Interior certified the name of the claimant to the Civil Service Commission as an employé in the office of the surveyor-general, within the terms of the statute and the Executive order. He was, therefore, entitled to the protection of the President's order of July 27, 1897 (14 An. Rep. Civ. Serv. Comm. 133): "No removal shall be made from any position subject to competitive examination except for just cause and upon written charges filed with the head of the department or other appointing officer, and of which the accused shall have full notice and an opportunity to make defense." If the contention of the Government be correct, and the attempted suspension by the surveyor-general was equivalent to a dismissal from office, such action would run counter to the requirements of the Presidential order just quoted. The action of the surveyor-general was not upon written charges, and no notice or opportunity to make defense was given to the accused, as provided in that order. The appellee being entitled to the protection of this order, and to have notice of the charges preferred, and an opportunity to make defense, the attempted removal, if such it was, was without legal effect; nor can we find any authority, statutory or otherwise, authorizing the suspension in the manner undertaken in this case. The at-

tempted suspension was, held to be without authority by the Commissioner of-the General Land Office, and the surveyor-general was directed to reinstate the claimant and to proceed by regular charges against him. In the meantime the record shows that the claimant was ready and willing to discharge the duties of his position, and had received no compensation therefor during the time of his wrongful suspension. Whether he could have been summarily removed or suspended by the President or other competent authority is not the question now before the court, but the question is whether the employé during his wrongful suspension by a subordinate officer is entitled to the compensation provided by law. We see no reason in such an attitude of the case, where the wrongful suspension is clearly established, and the ability of the incumbent to discharge the duties of his office affirmatively found, for withholding from him the compensation given by law to an incumbent of the place. If this be not so, then a regular and duly qualified employé in the public service, protected by the statute and the orders of the President made in pursuance thereof, can be deprived of the benefit and emolument of his position by a wrongful and illegal suspension from his duties. We do not think such a contention can be sustained either by reason or authority. Where an officer is wrongfully suspended by one having no authority to make such an order, he ought to be, and is, entitled to the compensation provided by law during such suspension. Throop on Public Officers, § 407; *Emmitt* v. *Mayor &c. of New York*, 128 N. Y. 117. This was the view entertained by the Court of Claims in deciding *Lellmann's* case, 37 C. Cl. 128, on the authority of which the case at bar was decided by that court. We think the ruling was correct.

The case comes to this: The appellee, by his appointment, practically made by the Secretary of the Interior in entering his name in the classified list and designating him for the service required, was entitled to the privileges and emoluments of his position until he was legally disqualified by his own action or that of some duly authorized public authority. The at-

tempted suspension without authority of law, he remaining ready and willing to discharge the duties of the place, could not, during the period of such wrongful suspension, have the effect to deprive him of the compensation legally belonging to one entitled to hold the position.

*Judgment affirmed.*