## BORAK v. UNITED STATES.

### No. 46772.

Court of Claims.

March 1, 1948.

MADDEN, Judge, dissenting in part.

Stanley H. Borak, of New York City, in pro. pers.

Henry Weihofen, of Washington, D.C., and Herbert A. Bergson, Acting Asst. Atty. Gen., for defendant.

Before JONES, Chief Justice, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

HOWELL, Judge.

This is a suit for salary in the amount of $7,038.43, which represents the amount which the plaintiff would have received as United States Naturalization Examiner in the Department of Justice, for the period from January 19, 1942, to June 7, 1944.

Plaintiff was summarily dismissed from service in January 1942, and was not reinstated until he obtained a judgment of the District Court of the United States for the District of Columbia on June 5, 1944, which so directed. Borak v. Biddle, 78 U.S.App. D.C. 374, 141 F.2d 278.

After the plaintiff's summary dismissal in January of 1942, he protested to the Deputy Commissioner of the United States Naturalization Service, to the Attorney Gen-

eral, and to the Civil Service Commission. No relief whatsoever was granted him, no action was taken on his protest against the summary dismissal made without hearing or preference of charges, especially since the Attorney General advised the plaintiff by letter that the actions terminating his services were justified.

Thereupon plaintiff instituted suit in the District Court of the United States for the District of Columbia, on July 30, 1942, for mandamus restoring him to office upon examination of his personal record, for declaratory judgment of his rights, and for the salary of office from the time of his summary dismissal. In his suit he named the then Attorney General, Francis Biddle, as head of the Department of Justice. The Attorney General appeared, answered, and thereafter the Government moved for summary judgment. Plaintiff cross-moved for summary judgment and for judgment on the pleadings. The District Court, without opinion, granted defendant's motion dismissing the complaint, whereupon plaintiff appealed to the United States Court of Appeals for the District of Columbia, which, on March 6, 1944, reversed, and directed judgment for the plaintiff and that he be restored to office.

Upon the rendition of the decision of the Court of Appeals that the District Court had no jurisdiction of the claim for salary, plaintiff filed a claim for salary with the General Accounting Office in May 1944. No decision has since been made by that office.

■ The judgment of the District Court entered pursuant to the mandate of the Court of Appeals, provided: "such claim for salary is dismissed without prejudice to appropriate proceedings before a tribunal of competent jurisdiction." This Court, having jurisdiction of such a claim for salary by virtue of the Tucker Act, 28 U.S. C.A. § 41(20), the only question before us is whether or not plaintiff is entitled to receive the full amount of the salary as covered by the stipulation entered into in open court or whether the amount is to be reduced by off-setting the amount of $5,267.62 which plaintiff earned in private employment during this period of time.

■ That a de jure holder of an office is entitled to the salary thereof during the period of illegal dismissal has been established by the Supreme Court of the United States in the leading cases of Perkins v. United States, 116 U.S. 483, 6 S.Ct. 449, 29 L.Ed. 700, and United States v. Wickersham, 201 U.S. 390, 26 S.Ct. 469, 50 L.Ed. 798. Following such rule, this Court recently granted judgment for a salary during a period of illegal dismissal. Elchibegoff v. United States, 106 Ct.Cl. 541. In the instant case, as in the one just cited, an effort was made by the Government to show that another person occupied plaintiff's position. This Court has also said, "salaries fixed by Congress are the salaries payable to those who hold the office and not to those who perform the duties of the office." Coleman v. United States, 100 Ct.Cl. 41, reaffirmed, Dvorkin v. United States, 101 Ct. Cl. 296.

In Borak v. Biddle, supra, the United States Court of Appeals for the District of Columbia, ruled that plaintiff as an officer was barred from suing for salary in the District Court by reason of the Tucker Act, 28 U.S.C.A. § 41 (20), which vests exclusively in the Court of Claims jurisdiction of action by officers for salaries. The Court of Appeals in its decision directed that plaintiff be restored to office. In that proceeding the Government insisted that plaintiff was suing as an officer and even in the proceeding in this Court the Government conceded on trial that if plaintiff was an officer there could be no off-set.

This is not an action for damages but an action by the holder of the office for the salary attaching thereto. We think a United States Naturalization Examiner is an officer of the United States within the meaning of that term.

The Government contended in the prior action in its answer and its brief in every court that plaintiff was an officer of the United States. The decision of the United States Court of Appeals was for plaintiff's restoration to office, Borak v. Biddle, supra.

The statute, 8 U.S.C.A. § 502(g), describes Naturalization Examiners as officers. They are required to take an oath of office and the Immigration and Naturaliza-

tion Service has always considered them to be officers in all of their lectures, pamphlets and the officially sponsored and endorsed organization known as the "United States Immigration-Naturalization Officers' Association." The plaintiff was appointed by the Attorney General, the head of the Department of Justice, in accordance with Article 2, Section 2, Clause 2, of the Constitution of the United States, which provides that the President " * * * shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." It can be conceded that plaintiff was a subordinate officer but nonetheless an officer of the Immigration and Naturalization Service of the Department of Justice.

He was not working under a contract with a fixed time limit on the holding of the office. He held a public office with tenure, duties, and compensation established by law. The salary was an incident of the office and as this Court has repeatedly held, is payable not to those who do the work but to those who hold the office. Jacobs v. United States, 41 Ct. Cl. 452; Whiting v. United States, 35 Ct.Cl. 291, 301; Miller v. United States, 86 Ct.Cl. 609; Coleman v. United States, 100 Ct.Cl. 41.

 However, it does not necessarily follow that the plaintiff is entitled to recover the full amount of his salary without off-set. The very Act which confers jurisdiction upon this Court to hear and determine a claim of this nature also includes the consideration of "set-offs." 28 U.S.C.A. § 250 (2), Jud.Code, § 145 (2):

"Set-offs. Second. All set-offs, counterclaims, claims for damages, whether liquidated or unliquidated, or other demands whatsoever on the part of the Government of the United States against any claimant against the Government in said court: * * *"

Additional language is found in Sec. 265, Jud.Code, Sec. 159:

"Petitions and Verification. The claimant shall in all cases fully set forth in his petition the claim, the action thereon in Congress or by any of the departments, if such action has been had, what persons are owners thereof or interested therein * * *; *that said claimant is justly entitled to the amount therein claimed from the United States after allowing all just credits and off-sets; * * *"* [Italics supplied.]

The plaintiff does not contend that in his capacity as Examiner in the Immigration and Naturalization Service he was able to devote any portion of his time to the private practice of law, nor does he give any indication as to the probable amount of earnings he would have received had he been able to so engage in such private practice while so employed.

Plaintiff did obtain employment as an attorney in the private practice of law and as nearly as can be determined from the record, his earnings during the period covered by this claim were $5,267.62.

This, in our opinion, is a "just credit and offset" under the provisions of the jurisdictional act (Sec. 250 (2) and Sec. 265, supra). Accordingly, the amount of plaintiff's earnings as found in the amount of $5,267.62 should be off-set against the full amount of salary which by stipulation is $7,038.43.

Judgment will be entered in favor of plaintiff in the amount of $1,770.81. It is so ordered.

JONES, Chief Justice, and LITTLETON and WHITAKER, Judges, concur.

MADDEN, Judge (dissenting in part).

I am unable to agree with that part of the Court's decision which sets off, against the salary lost by the plaintiff by reason of his wrongful dismissal, his earnings in the practice of law during the period that he was kept out of his position. When the Government wrongfully prevents an employee from doing his work, the time that

this gives the employee is not Government time, in any real sense. It is time which the employee involuntarily has on his hands by reason of the Government's wrong in refusing to let him use it in serving the Government. So I think the sections of the Judicial Code relating to offsets cited in the Court's opinion are inapplicable.

The Court holds that the plaintiff was an "officer" of the United States. The Government concedes in its brief that if the plaintiff is allowed to recover, and if he was an "officer," which it denies, there should be no deduction from his salary for outside earnings. The authorities are numerous and practically unanimous to that effect. They are collected in an annotation in 150 A.L.R. beginning at page 100. There is a considerable dearth of reasoning in the decisions as to why the law should be different for officers than for private employees discharged in breach of contract, or for public employees, not officers, discharged in violation of their rights. It is suggested in People ex rel. Benoit v. Miller, 24 Mich. 458, 9 Am.Rep. 131, that in many cases it would be financially profitable to be excluded from public office, hence it would, in effect, nullify the right to sue if the amount of damages for exclusion could be reduced by outside earnings. But whether a better reason could be suggested for the prevailing rule, or whether it rests upon some innate and inexpressible sense of expediency or of right, I would let the rule stand until someone asked us to change it, and at least tried to give us some reason for initiating the contrary rule.