Mary Patricia SIPE and George Emery Sipe, husband and wife, Plaintiffs,

v.

Virginia L. FRITZ, and Robert Fritz, husband and wife, individually and Virginia L. Fritz, in her capacity as Clerk of the Bankruptcy Court for the District of Arizona; The Honorable William A. Scanland, The Honorable Robert G. Mooreman, The Honorable George B. Nielsen, and The Honorable Lawrence Ollason, Judges of the Bankruptcy Court for the District of Arizona; William E. Foley, Director of the Administrative Office of the United States Courts, Defendants.

No. Civ 83–1624 PHX SAW.

United States District Court,
D. Arizona.

May 7, 1984.

Naida Axford, Hocker & Axford, P.C., Tempe, Ariz., for plaintiff.

A. Melvin McDonald, U.S. Atty., Dist. of Ariz., Paul R. Corradini, Asst. U.S. Atty., Phoenix, Ariz., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

WEIGEL, District Judge.

### I

### INTRODUCTION

This action arises out of a dispute surrounding the attempt by Virginia Fritz, Clerk of the United States Bankruptcy Court for the District of Arizona (Arizona Bankruptcy Court), to terminate from employment Mary Patricia Sipe, the Chief Deputy Clerk of that court. On July 22, 1983, Fritz notified Sipe, orally and in a hand-delivered letter, that her position would be eliminated effective August 21, 1983. On August 19, her last working day, Sipe filed her complaint here seeking preliminary injunctive relief, damages and other relief.[1] The defendants named in the

---

1. Sipe's husband, George, is also named as a plaintiff. Because any recovery by him is strictly derived from her right to recover, the Court hereafter refers to Mary Patricia Sipe as "plaintiff" on the basis that all references to "plaintiff" include George Sipe to the extent he is entitled to participate as a party plaintiff.

complaint were Virginia L. Fritz and her husband Robert Fritz, the four judges of the Arizona Bankruptcy Court, and William E. Foley, Director of the Administrative Office of the United States Courts.

Plaintiff asserted six legal bases for the relief sought. The first was that Fritz, as clerk of the bankruptcy court, lacked authority to fire Sipe without the approval of the bankruptcy court. Plaintiff alleged that Fritz did not obtain such approval. Second, plaintiff contended that the attempted termination was invalid because the procedures used did not conform to the Recommended Guidelines for Adverse Personnel Action in the United States Courts (RGAPA). Third, plaintiff claimed Fritz's action constituted age discrimination, and as such violated the Equal Employment Opportunity (EEO) Plan that the court had adopted. In conjunction with this claim, plaintiff further alleged that she had been denied a proper hearing on her complaint of age discrimination because the members of the committee appointed to hear the complaint were subject to conflicts of interest.

The fourth claim asserted by plaintiff was premised on her contention that her employment status is protected by the Civil Service Act, 5 U.S.C. §§ 2301 *et seq.*, and that she can be removed only for cause. The fifth claim was premised on a contention that plaintiff holds a property interest in her employment protected by the due process clause of the Constitution. The sixth claim was premised on a contention that statements made by Fritz concerning the reasons for Sipe's termination infringed on plaintiff's liberty interest in being free from stigma that might hinder future employment, also protected by the due process clause. In connection with these last three claims, plaintiff alleged she received no hearing or other adjudication concerning the purported reasons for her dismissal, so that the requirements of the Civil Service Act and the due process clause were not satisfied.

Defendants on September 26, 1983 filed a motion to dismiss all causes of action set forth in the complaint. The Court, treating the motion as one for summary judgment,

granted the motion as to plaintiff's claim that she was protected from discharge without cause by the Civil Service Act. Defendants' motion was denied in all other respects, and the case proceeded to trial before the Court on October 17–20, 1983. The Court has fully considered the evidence introduced at trial, and now issues the following findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

## II

### JURISDICTION

■ The Court has jurisdiction of plaintiff's claim that the action of the Administrative Office (AO) in separating Sipe from employment was invalid pursuant to the Administrative Procedures Act. 5 U.S.C. § 706(2)(C); *see* 5 U.S.C. §§ 701(b) (AO is an "agency"), 702 (waiving sovereign immunity and providing right to review of AO action) & 703 (specifying form and venue of proceeding); 28 U.S.C. § 1331 (conferring jurisdiction upon this Court); *see also Beller v. Middendorf,* 632 F.2d 788, 796–98 (9th Cir.1980). The presence of claims for monetary relief raises a more difficult question, because from the record it appears that they may now exceed $10,000 in amount. Had the claim exceeded $10,000 when the complaint was filed, this Court would not have jurisdiction to entertain the action. *See Denton v. Schlesinger,* 605 F.2d 484, 486 (9th Cir.1979); *Keller v. Merit Systems Protection Board,* 679 F.2d 220, 222 (11th Cir.1982). The amount of the claim on the date of the complaint determines whether the district court has jurisdiction. *See Keller,* 679 F.2d at 222 n. 4. Plaintiff's claim was less than $10,000 on the date her complaint was filed. The Court therefore has jurisdiction under 28 U.S.C. § 1346(a)(2).

## III

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. *Summary of Findings from the Record*

1. Mary Patricia Sipe was first appointed by Bankruptcy Referee Hugh M. Cald-

well to a temporary position as a deputy clerk for bankruptcy in the Tucson Division of the District of Arizona on August 28, 1961. On April 30, 1962, she was placed in a permanent clerk position, also at Caldwell's request. Effective April 22, 1968, Caldwell promoted her to the position of Chief Clerk in the Tucson division of the Arizona Bankruptcy Court. She was retained in that capacity until January 1, 1978, when she was transferred to a position as an asset closing clerk in the Phoenix division of the Arizona Bankruptcy Court. This transfer was again requested by Caldwell, then a bankruptcy judge, and was approved by Chief Judge Walter E. Craig of the United States District Court for the District of Arizona. The transfer entailed a reduction in Sipe's salary and a reduction in her grade level under the Judicial Salary Plan. On December 4, 1978, Sipe was promoted back to her former level as a result of a letter signed by Judge Caldwell and Bankruptcy Judge Vincent D. Maggiore and approved by Chief Judge Craig.

2. On September 18, 1979, Caldwell, then Chief Bankruptcy Judge, and Judge Maggiore signed an order appointing Sipe as Chief Deputy Clerk of the United States Bankruptcy Court for the District of Arizona. The order also contained lines for the signatures of the other two Arizona bankruptcy judges, Edward E. Davis and William A. Scanland. These judges did not sign. Based on the testimony of Judge Scanland, the Court finds that the reason they did not sign was because they did not favor Sipe's appointment to a Chief Deputy Clerk position.[2] The order of appointment was approved by Chief Judge Muecke of the District of Arizona, and stated that the appointment was "[o]n the recommendation of Virginia L. Fritz, Clerk of the [Arizona] Bankruptcy Court."

3. Chief Judge Caldwell died on May 3, 1983. Judge Maggiore retired on May 31, 1983. On July 11, 1983, George B. Nielsen, Jr. was appointed to fill one of the vacant bankruptcy judge positions. On July 26, 1983, Lawrence Ollason was appointed to

fill the other. The fourth bankruptcy judge position is occupied by Judge Robert G. Mooreman.

4. In May of 1983, at the time Judge Caldwell died or shortly thereafter, Fritz decided that Sipe should be removed from her position in the Bankruptcy Court clerk's office. Although the evidence is in conflict, the Court on the basis of Judge Scanland's testimony finds that Fritz did not inform Scanland, who succeeded Judge Caldwell as Chief Judge, of her desire to remove Sipe until July, 1983. Prior to discussing the matter with Chief Judge Scanland, Fritz undertook a series of actions intended to trigger the process leading to Sipe's removal.

5. Late in May, Fritz spoke by telephone with Judith Robinson, a Supervisor/Management Specialist in the AO. Fritz told Robinson that she intended to abolish the Chief Deputy position occupied by Sipe, and that she intended to make the abolition effective on the date Sipe was eligible for retirement, which was August 21, 1983. Fritz also told Robinson she was unhappy with Sipe's job performance, but did not detail any specific complaints. Robinson then consulted Ray Neely, her superior at the AO. Neely indicated that he was already familiar with Fritz's dissatisfaction with Sipe, and told Robinson to advise Fritz that she should accord Sipe a hearing prior to taking action that would result in Sipe's termination. Robinson in turn contacted Fritz and told her that in the view of the AO a hearing on Sipe's case was "highly suggested." Fritz responded with a statement that she would discuss the question of a hearing with Chief Judge Scanland.

6. Fritz also discussed her intention to terminate Sipe with H. Kent Presson, the Assistant Chief of the Bankruptcy Division of the AO. Presson was already familiar with the fact that repeated criticism had been leveled at Sipe's performance since 1976, when she was still working in the Tucson division of the Arizona Bankruptcy Court. When Fritz informed Presson of

---

2. The opposition of Judges Davis and Scanland to Sipe's appointment as Chief Deputy Clerk was memorialized by each in comments delivered to Fritz in response to the proposed appointment.

her intention regarding Sipe, Presson told Fritz that she should be sure to contact the Personnel Division of the AO and to "meticulously follow its instructions."

7. Fritz sent a letter dated June 6, 1983 to R. Glenn Johnson, Chief of the Personnel Division of the AO, describing her desire to abolish the position of Chief Deputy Clerk. The letter began: "With the approval of the Court, I am requesting that the title of Chief Deputy in the United States Bankruptcy Court for the District of Arizona be eliminated." After explaining in some detail the reasons supporting her request, Fritz continued,

[w]hen this action is completed, which should be effective on August 21, 1983, the date the incumbent Chief Deputy is eligible for retirement, I will evaluate the existing organizational structure and initiate an appropriate request to utilize the position in a more effective and economical means.

8. The June 6 letter was not brought to the personal attention of Johnson, and was not read by him.[3] Instead, the letter was read and acted upon by Robinson. The letter confirmed Robinson's previous impression that Sipe planned voluntarily to retire on August 21, and it also led Robinson to believe that Fritz's request had been expressly approved by the Arizona Bankruptcy Court. Robinson sent Fritz a letter dated June 15, 1983 stating that her office had no objection to the proposed position abolition.

9. In July, Fritz told Chief Judge Scanland that she was going to abolish Sipe's position. Fritz said she had authority to abolish the position and that she would do so because she did not feel that she needed a chief deputy. Chief Judge Scanland replied that the judges had nothing to say about the proposed action. According to the Chief Judge's testimony, which the Court adopts as a finding of fact, he said to Fritz that

the abolition of that position or any position in my judgment was between her and the Administrative Office. They had created it. And I had had nothing to do with it. And I dare say it's somebody other than we that can abolish it.

Based on an absence of evidence in the record, the Court finds that Fritz did not discuss her proposed action with any other judge. Nor did Fritz alert Chief Judge Scanland to the fact that her proposed action would result in Sipe's termination from employment.

10. On July 22, 1983, Fritz called Sipe into her office. Fritz said to Sipe, "You will be 60 on August 21, and I am terminating you as of then. You will be of retirement age on that date, and your services are no longer required." At the same time, Fritz gave Sipe a letter of termination, also dated July 22. Sipe scanned the letter and said, "I am dumbfounded. You know I will appeal." Fritz replied, "You have no right to appeal, because it does not come under race, color or creed."

11. The July 22 letter is a three-page document that sets forth reasons asserted by Fritz for undertaking the removal of Sipe from further employment with the court.[4] It contains several criticisms of Sipe's performance, consisting of quotes from an Audit Report compiled earlier in 1983 by the AO covering operations in the Arizona Bankruptcy Court clerk's office. Among these criticisms were that: (1) Sipe was not adequately performing her day-to-

---

3. Johnson credibly testified that all letters such as Fritz's letter of June 6 will come to his attention "from now on" because the abolition of a position can affect the employee in that position. Due to such potential consequences for Sipe, Johnson stated that had he read the letter, he would have informed AO Director Foley concerning the matter. However, Johnson also testified that from Fritz's letter he would have presumed, like Robinson, that Sipe was merely retiring voluntarily and that the job would then be abolished.

4. The text of the letter leaves no doubt that Fritz intended to remove Sipe from the clerk's office entirely, not just to abolish her Chief Deputy position. In the letter, Fritz told Sipe that "[t]he organization of the District of Arizona Bankruptcy Court cannot otherwise support an employee of your grade and salary. Therefore, you are advised that your services are not acceptable in any other position."

day management responsibilities; (2) Sipe had ordered cases reassigned without court order, a practice that contradicted the court's stated desire for a random assignment system which would avoid either the opportunity for or the appearance of judge-shopping; and (3) Sipe had accumulated an excessive backlog of cases.

12. The Audit Report was compiled in January, 1983, by Marc S. Herlands, an attorney employed as a management analyst by the AO. The statements contained in the report represented Herlands's independent assessment of conditions in the clerk's office, based on his interviews with Fritz and other clerk's office employees and his inspection of records maintained in the clerk's office. The report was prepared in the ordinary course of the AO's functions, and authorship cannot in any sense be attributed to Fritz. The Audit Report was designed and used exclusively as an internal management tool of the AO, and its contents were not available to the public. Herlands discussed some of the concerns about Sipe that were listed in the report with Fritz and Chief Judge Muecke. The contents of the report were not otherwise published outside the AO.

13. The July 22 letter signed by Fritz was typed by Linda Broz, Fritz's secretary. Broz did not disclose the contents of the letter to anyone. Fritz did not discuss the contents of the letter with anyone except Sipe. A copy of the letter was sent to Robinson in Washington, where it was eventually placed in Sipe's personnel file. The only persons with actual or potential access to the letter in the file prior to the initiation of this lawsuit were Sipe herself, employees of the personnel office of the AO, and FBI agents in the event Sipe should request a security clearance in connection with future federal employment. The contents of the letter were not made public or disclosed in any way except as a result of Sipe's own actions in challenging her termination.

14. Sipe's separation from employment was documented by the AO as an adverse personnel action. On an AO form entitled Notification of Personnel Action, the nature of the action was described as "termi-

nation." Under "Remarks" the same form contains the comment "Position Abolished." Based upon this evidence and other evidence in the record, including the July 22 letter and the testimony of Robinson and Johnson, the Court finds that the net intendment of Fritz's actions was both to terminate Sipe from employment and to abolish the position of Chief Deputy Clerk in the Arizona Bankruptcy Court.

15. On August 1, 1983, Sipe notified Fritz that she intended to grieve her termination pursuant to the Employee Grievance Procedure adopted by Fritz for the clerk's office on April 27, 1983. Fritz initially referred Sipe to Michael R. Temple, an estate administrator in the clerk's office, for consultation concerning the grievance. Sipe met with Temple on the same day. Temple told Sipe that any grievance would have to be set forth in writing. He also commented that because the grievance was against Fritz and Fritz was the ultimate decisionmaker under the grievance procedure, the grievance might prove ineffective. Sipe duly filed a grievance, dated August 1. Fritz, acting pursuant to the third and final step in the grievance procedure, on August 22, 1983 issued her decision denying Sipe's grievance. The decision was later twice amended, without change in result.

16. On August 5, 1983, Sipe filed a complaint with Temple pursuant to the EEO Plan of the Arizona Bankruptcy Court. This complaint alleged that Sipe had been terminated because of her age. The complaint was filed with Temple, who had been designated by the court as EEO Coordinator under the EEO Plan. Pursuant to the EEO Plan, Chief Judge Scanland appointed three persons to an EEO Complaint Committee to hear Sipe's discrimination complaint. In addition to Temple, who was chairman, the members appointed to this committee were Thomas R. Kadatoni, another estate administrator in the bankruptcy court clerk's office, and Carol R. Cornoyer, the office manager and deputy-in-charge of the Tucson division of the bankruptcy court clerk's office. All three members of the committee were directly subor-

dinate to Fritz in the Arizona Bankruptcy Court chain of command. On August 12, Sipe's counsel mailed a letter to Chief Judge Scanland, requesting him to disqualify Temple from service on the committee because of the conflict of interest inherent in Temple's status as Fritz's subordinate.[5] The letter was mistakenly sent to an incorrect address, and was not received by Judge Scanland at any time relevant to the present action. Sipe also requested the members of the EEO Complaint Committee to recuse themselves. The committee members declined to do so.

17. The EEO Complaint Committee met and heard Sipe's complaint on August 17, 1983. The committee first interviewed Sipe and then separately interviewed Fritz. The interviews were conducted informally, without cross-examination or even attendance by the opposing party. The committee also examined Sipe's personnel file. On September 6, 1983, the committee issued its report pursuant to the EEO Plan, containing its conclusion that "complainant's age was *not* a factor in the decision of the Clerk, Mrs. Fritz, to abolish the position of Chief Deputy Clerk and as a result terminate the employment of Mrs. Sipe."

18. Pursuant to the Discrimination Complaint Procedures of the EEO Plan, Sipe on September 16, 1983 filed a request for review of the committee's findings by Chief Judge Scanland. Chief Judge Scanland recused himself and referred the matter to the Judicial Council of the Ninth Circuit for reassignment to another judge. The matter has been reassigned, but it is being held in abeyance pending disposition of the present case.

19. On August 1, 1983, Sipe by counsel filed a "Request for Personnel Hearing" pursuant to the RGAPA, a document prepared and circulated by the AO. The request was directed to the judges of the Arizona Bankruptcy Court. In the request, Sipe took the position that the RGAPA guidelines are mandatory and must be followed in connection with any personnel action that adversely affects an employee's pay or position. Sipe further maintained that the manner of her termination violated the RGAPA in a number of respects. On August 11, 1983, Sipe supplemented her request for a hearing with a memorandum of authorities. In addition to the RGAPA, Sipe cited 28 U.S.C. § 771, which she contended allows removal of deputy bankruptcy court clerks only "with the approval of the court." The memorandum observed that "if the Bankruptcy Court has approved of the decision to terminate Mrs. Sipe it does not appear on the record."

20. In a letter dated August 16, 1983, three of the four judges of the Arizona Bankruptcy Court responded to Sipe's request for hearing.[6] The letter stated in part:

We presume you rely on Sec. 771(b), which grants power to the Clerk, with Court approval, to appoint and remove employees. That Section, which becomes effective April 1, 1984, does not require a personnel hearing by the Bankruptcy Court for removals or elimination of a position.

The recommended guidelines were not adopted by either the Arizona District or Bankruptcy Courts. Further, these guidelines expressly exclude abolition of a position ....

We conclude we lack jurisdiction to hold a hearing to review the decision to abolish the Chief Deputy Clerk's position as an adverse personnel action.

21. Based on the August 16 letter signed by the judges and the absence of any evidence that any judge expressed approval of Sipe's termination, the Court finds that while the judges of the Arizona Bankruptcy Court did not actively oppose Sipe's termination, neither did they express any approval of the termination. Chief Judge Scanland and the other bankruptcy judges believed that the matter of Sipe's

---

5. From the context of the letter, the Court finds that when the letter was composed, Sipe was unaware of the identity of the other members of the EEO Complaint Committee and for that reason did not object to them in the letter.

6. Judge Ollason recused himself from consideration of the matter.

removal was beyond their jurisdiction. At no time did any judge state that in the event the termination was subject to the court's authority, he would approve it.

22. Sipe's last day of service in the Arizona Bankruptcy Court was August 19, 1983. The AO has documented and otherwise treated the matter of Sipe's employment as if she was terminated on that date.

B. *Analysis and Conclusions of Law*

1. *28 U.S.C. § 771(b).*

The statutory authority governing the appointment and removal of deputy clerks of the bankruptcy court during the period relevant in this case is 28 U.S.C. § 771(b).[7] That statute provides with respect to bankruptcy courts that:

> The clerk may appoint, with the approval of the court, necessary deputies, clerical assistants, and employees in such number as may be approved by the Director of the Administrative Office of the United States Courts. Such deputies, clerical assistants, and employees shall be subject to removal only by the clerk with the approval of the court. If there is no clerk, the Bankruptcy Judge shall perform the duties of this subsection.

Sipe was a "deputy" within the meaning of section 771(b). She was subject to removal, therefore, only "by the clerk with the approval of the court." The issue presented for decision is whether Fritz, in removing Sipe, acted "with the approval of the court."[8]

7. Section 771(b) became effective on April 1, 1984. *See* Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 402(b), 92 Stat. 2682 (1978). However, the Bankruptcy Reform Act also provides that during the transition period between October 1, 1979 and March 31, 1984, both the clerk of the bankruptcy court and the judges of the court have the same respective rights and powers that they would have under section 771(b). *Id.* § 404(e), 96 Stat. 2684.

Although the Bankruptcy Reform Act of 1978 was held unconstitutional in some respects in *Northern Pipeline Constr. Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), that decision does not affect the applicability of section 771(b) to the removal of deputy clerks. *See* D.Ariz. Local R. 55(g).

8. Defendants have consistently argued that Fritz did not need the approval of the court because

The Court has not found any decisions defining what constitutes "approval of the court" for purposes of section 771(b) or its identically worded district court analog, 28 U.S.C. § 751(b). The statutory section governing district court deputy clerks in the 1940 United States Code provided that such deputies could be removed by the clerk "with the concurrence of the district judge." 28 U.S.C. § 8 (1940); *see also* Pub.L. No. 475, § 4, 36 Stat. 1088 (1911). This phrasing marked a shift from prior law, under which deputies were subject to removal solely "at the pleasure of the court." *See* Act of June 8, 1872, 17 Stat. 330; *see also In re Hennen*, 38 U.S. (13 Pet.) 230, 258–60, 10 L.Ed. 138 (1839). The change accorded deputy clerks some degree of insulation from removal in the unfettered discretion of judges. However, the requirement that the judge "concur" in the clerk's decision to remove continued to connote the necessity for some overt manifestation of assent by the judge in order to effect a valid removal. The wording of the statute was modified into its present form during the 1948 recodification of United States Code, but the legislative statements accompanying recodification yield no indication of an intent to alter the substance of the standard governing removal of deputy clerks. *See* 1948 U.S. Code Cong.Serv. 1803–05 (reviser's notes).

The Court concludes that under section 771(b), a bankruptcy court clerk may

she did not "remove" Sipe within the meaning of section 771(b). Rather, they suggest that Fritz and the AO merely "abolished" Sipe's position. Under the statute it is clear that the AO, not the bankruptcy court, has ultimate authority to control the number of deputy clerk positions available to a bankruptcy court clerk's office.

Defendants' argument fails because, as the Court has found, Fritz's actions amounted to an attempt both to remove Sipe *and* to abolish the position she occupied. Even assuming that the AO authorized a reduction in the number of deputy clerk positions in the Arizona Bankruptcy Court, a fact not established by the record, the decision as to which particular employee should be removed to effect the reduction cannot under section 771(b) be made without court approval.

remove one of her deputies only if he or she acts pursuant to some express manifestation of approval from the bankruptcy court.[9] Any minimal manifestation of approval is sufficient, as long as it is unequivocal. If, for example, the Arizona Bankruptcy Court had written a memorandum to Fritz stating that she had blanket approval for the removal of any of her employees, the requisite approval of Sipe's removal would be present. The Court would also infer approval by the court as a whole from the assent of the chief judge alone, absent any indication that a majority of judges on the court hold a contrary view.[10] But in this case, the Court finds that the Arizona Bankruptcy Court gave no express manifestation of any kind that it approved of Fritz's decision to terminate Sipe.

■ The judges of the court, led by Chief Judge Scanland, have consistently expressed the view that they lack jurisdiction to approve or disapprove Fritz's actions in terminating Sipe and abolishing the Chief Deputy position. The failure of the judges to actively oppose Sipe's dismissal does not constitute court "approval" within the meaning of section 771(b). Nor can the fact that two bankruptcy judges, including Chief Judge Scanland, opposed Sipe's promotion to the Chief Deputy post in 1979

reasonably be construed as "approval" by the court of her termination in 1983. The Court finds that Fritz, in attempting to remove Sipe, did not act "with the approval of the court," and accordingly concludes that Sipe was not validly terminated from employment as a deputy clerk of the Arizona Bankruptcy Court.[11]

2. *RGAPA.*

■ Sipe also contests the validity of her termination on the ground that it was not effectuated in conformity with the procedures contained in the RGAPA. However, the record establishes that the Recommended Guidelines, as their name suggests, are only recommended for use by courts, and are not binding. AO Chief of Personnel Johnson testified that to him it is "gospel" that courts are independent administratively as well as judicially, and that the AO cannot bind a court to follow a set of guidelines or procedures in connection with personnel decisions. Even assuming a court could under some circumstances bind itself to follow the RGAPA, from the record in this case it is clear that the Arizona Bankruptcy Court has never adopted the guidelines. The Court concludes that the validity of Sipe's termination is not

9. *Shore v. Howard,* 414 F.Supp. 379 (N.D.Tex. 1976), is not to the contrary. In that case, the plaintiffs raised the contention that a statute providing that certain state employees "shall be subject to removal at the will of the majority of the Judges" required some personal action by the judges in order to remove such an employee. *Id.* at 391. The court declined to rule that a covered employee discharged without personal action by the judges could maintain an action in federal court to regain his position. *Shore,* however, is much different from the present case because it involved a state, not a federal, statute. The correct interpretation of the state law was not at issue. Rather, the question presented was much narrower: Whether the state statute gave a covered employee any entitlement protected by the due process clause to a hearing before the judges prior to termination. The court did not express any view concerning the requirements for valid termination as a matter of state law, but held only that the statute "cannot serve as a source for any claim by Plaintiffs that they were denied procedural due process in their dismissal." *Id.*

Here, by contrast, the Court must decide the federal question of whether Sipe's employment as a deputy clerk was validly terminated.

10. No issue of the manner in which "court approval" must be determined is involved in this case. The record fails to demonstrate that *any* judge ever manifested approval of Fritz's attempted termination of Sipe.

11. This conclusion is unaffected by the fact the AO treated Sipe's termination as valid. The AO's position was based primarily upon Fritz's statement in her June 6 letter that her request to abolish Sipe's position was made "with the approval of the Court." In the light of Judge Scanland's testimony, which the Court finds credible, Fritz's statement in the letter must be viewed as a representation that induced a mistaken handling of Sipe's employment status by the AO. Moreover, the AO's interpretation cannot make effective a removal that does not comport with the statutory prescription.

affected by any failure to follow the RGA-PA.

### 3. *EEO Plan.*

Sipe contends that under the EEO Plan adopted by Fritz and the Arizona Bankruptcy Court, she was entitled to a hearing before an impartial body on her complaint of age discrimination. She further contends that the committee which heard her complaint was not impartial, because its members were clerk's office employees subordinate to Fritz. Sipe asks the Court to appoint a new EEO Complaint Committee consisting of persons from outside the local bankruptcy court system to hear and investigate the age discrimination complaint.

Plaintiff's claim that the members of the EEO Complaint Committee in her case were subject to a conflict of interest may be well taken. All three members worked directly under Fritz, and all three knew that their prospects for advancement within the clerk's office were likely to depend on Fritz's recommendation.

Under the EEO Plan, however, the ultimate decision concerning complaints of age discrimination is made by the chief judge of the bankruptcy court. The chief judge clearly holds authority to order the formation of a new committee if he concludes that the original committee members should be disqualified for any reason. In this case, Chief Judge Scanland recused himself and referred Sipe's EEO complaint to the Judicial Council of the Ninth Circuit, which has since reassigned the matter to another judge. The Court concludes that Sipe's claim of committee bias must first be ruled upon by that judge. Until the judge charged with ruling on Sipe's complaint under the EEO Plan has rendered a decision, it is impossible for this Court to say that her complaint has been unfairly denied, because the complaint has not in fact been finally denied within the meaning of the Plan.[12]

### 4. *Due Process Claim Based on Property Interest.*

Sipe contends that she holds a property interest in her position as a Chief Deputy Clerk and that this property interest cannot be destroyed by the federal government without due process of law. She further maintains that the manner of her termination was arbitrary and did not satisfy the requirements of due process.

■■■ To have a property interest in government employment, an individual must have an entitlement to such employment. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Bollow v. Federal Reserve Bank of San Francisco*, 650 F.2d 1093, 1098 (9th Cir.1981), *cert. denied*, 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982). The requisite entitlement must be created by rule or mutually explicit understanding stemming from an independent source such as a statute, regulation, or contract. *See Bishop v. Wood*, 426 U.S. 341, 344 & n. 6, 96 S.Ct. 2074, 2077 & n. 6, 48 L.Ed.2d 684 (1976); *Bollow*, 650 F.2d at 1098–99. Sipe cites four basic sources of entitlement to procedural protections prior to dismissal: (1) printed materials, including the Judicial Salary Plan, the RGAPA and other grievance procedures plaintiff contends have been mandated for use in the Arizona Bankruptcy Court; (2) understandings based on plaintiff's prior employment experience; (3) AO policy; and (4) perceptions of Sipe and her co-workers that they are career employees who cannot be terminated except for cause. None of these qualify as a source of entitlement representing property protected by the due process clause.

The principal legal authority governing Sipe's employment as a deputy clerk is 28 U.S.C. § 771(b). As discussed above, section 771(b) makes deputy clerks subject to removal at the will of the clerk acting with the approval of the bankruptcy court. It

---

12. Moreover, in view of the fact that the Court's judgment will have the effect of nullifying the termination decision complained of in the EEO proceeding, it is not clear that the EEO complaint based on the circumstances of the attempted termination holds continued significance.

does not create any property interest. *See Williams v. McClellan,* 569 F.2d 1031, 1033 (8th Cir.1978). None of the authorities cited by plaintiff purports to supersede the language of the statute.[13] Indeed, it is highly doubtful whether the statutory mechanism for dismissal could be altered except by another duly enacted statute. Any entitlement to continued employment held by Sipe must therefore arise from some agreement, express or implied, by the clerk and the court to relinquish their statutory removal power.

Sipe does not allege that she was ever expressly promised that she would receive a hearing before termination. Instead, Sipe contends that her understanding that a hearing would be afforded was justifiable in the light of her longevity of tenure and the past custom and practice within the Arizona Bankruptcy Court.

Longevity alone does not create a property interest in continued employment. *Bollow,* 650 F.2d at 1099. Claims to such an interest that are based on custom, practice and policy must be approached with caution. *Id.* In this case, the evidence does not establish the existence of the custom and practice for which plaintiff contends. Sipe herself testified that there had never been any suspensions, demotions, terminations or other comparable adverse actions undertaken against an employee during her tenure with the Arizona Bankruptcy Court. The Court finds that there was no custom, policy or practice sufficient to rise to the level of a "mutually explicit understanding" that an employee such as Sipe would receive a hearing prior to termination.[14] *See Bollow,* 650 F.2d at 1099.

The remaining source of entitlement cited by plaintiff is "Administrative Office policy." As noted above, undisputed testimony by the AO Chief of Personnel establishes that the AO does not *require* courts to afford employees any hearing or other procedural review prior to termination. While the AO perhaps recommends that such procedures be used in the interest of sound management, final authority to remove employees rests with the courts, including the bankruptcy court. Whether the AO could assume such authority in the face of section 771(b) is highly doubtful. In any event, the record sufficiently demonstrates that the AO has not undertaken to require courts to refrain from arbitrarily discharging their employees.

The Court concludes that Sipe does not have any property interest in continued employment with the bankruptcy court, and that her termination (if valid) did not deprive her of such a property interest.

5. *Due Process Claim Based on Liberty Interest.*

Sipe's final cause of action is based on a contention that statements made in connection with her termination deprived her of a liberty interest protected by the Constitution without due process of law. She maintains that the charges contained in the July 22 termination letter, on which she was not given any hearing, deprived her of freedom from stigma and freedom to pursue her occupation.

Under appropriate circumstances, statements made by an employer in expressing the reasons for discharging an employee can implicate the employee's liberty interest. *See, e.g., Vanelli v. Reynolds School District No. 7,* 667 F.2d 773, 777–78 (9th Cir.1982). In order for such a liberty interest to be implicated, two conditions must be met. First, the charge must impair the employee's reputation for hones-

---

**13.** For instance, the Employee Grievance Procedure adopted by Fritz on April 27, 1983 at the request of the Judicial Council of the Ninth Circuit did not provide that an employee could be terminated only based on cause or other substantive criterion. Also, the grievance procedure does not suggest that the decision of the clerk concerning a grievance is subject to any further review. Sipe therefore received her full "expectancy" under the grievance procedure.

The Judicial Salary Plan, another source cited by plaintiff, addresses the system of compensation for judicial employees. Nothing in the Plan purports to alter or affect the statutory power of clerks and judges to remove employees.

**14.** For the same reason, any subjective "understanding" of Sipe's co-workers cannot serve as a basis for finding an entitlement by Sipe to a post-termination hearing.

ty or morality. *Jones v. Los Angeles Community College District,* 702 F.2d 203, 206 (9th Cir.1983); *Vanelli,* 667 F.2d at 777; *see Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971); *Debose v. United States Department of Agriculture,* 700 F.2d 1262, 1266 (9th Cir.1983). Second, there must be some public disclosure of the charge that might result in damage to the employee's standing and associations in the community sufficiently serious to constitute a stigma foreclosing the employee's freedom to take advantage of other employment opportunities. *See Debose,* 700 F.2d at 1266; *see also Bishop v. Wood,* 426 U.S. at 348, 96 S.Ct. at 2079.

In this case, Sipe has not established that either element of a liberty interest deprivation flowed from Fritz's statements. The only statements by Fritz concerning her reasons for terminating Sipe were contained in the July 22 letter. The letter expressed three basic complaints: (1) that Sipe was not adequately performing her day-to-day management responsibilities; (2) that Sipe had ordered cases reassigned without court approval, a practice that might allow judge-shopping; and (3) that Sipe had allowed an excessive backlog of cases to accumulate. None of these charges impugned Sipe's reputation for "honesty or morality." In arguing that the statements did impose a stigma of this kind, Sipe primarily stresses the assertions in the letter that Sipe's case assignment procedures constituted "questionable practices" which contradicted the court's desire to avoid "the opportunity by any party to 'judge shop'." However, the letter did not in any way suggest that Sipe derived improper personal gain from her case assignment practices or that she employed such practices deliberately in order to assist parties who desired to judge-shop. The statements in the letter merely suggest that

Sipe's performance of her case assignment duties was substandard. The statements did not rise to the level of stigmatization necessary to infringe a liberty interest. *See Debose,* 700 F.2d at 1266; *Bollow,* 650 F.2d at 1101 (liberty interests implicated only by accusations of "moral turpitude").

The Court also finds that the contents of the letter were not disclosed widely enough to hinder Sipe's ability to gain further employment, even if they did impose the requisite stigma. The only persons with access to the letter in the absence of Sipe's own actions were Sipe herself, Fritz, employees in the AO personnel office, and FBI agents in the event of a security investigation.[15] Testimony at trial established that prospective employers of Sipe who inquired about her employment record could not obtain access to the letter. Absent some public disclosure, statements no matter how stigmatizing do not invade any liberty interest. *See Bishop v. Wood,* 426 U.S. at 348, 96 S.Ct. at 2079; *Orloff v. Cleland,* 708 F.2d 372, 378 (9th Cir.1983); *Debose,* 700 F.2d at 1266; *Bollow,* 650 F.2d at 1101; *cf. Vanelli,* 667 F.2d at 778 n. 7 (liberty interest properly held infringed where district court found disclosure sufficient to affect adversely employee's opportunities for future employment).

In addition to the July 22 letter, Sipe cites the AO Audit Report as a document containing statements that deprive her of a liberty interest. These statements are the same ones quoted in the July 22 letter. As discussed above, they did not impugn Sipe's reputation for "honesty or morality." Also, the record shows that the Audit Report was no more widely disclosed than July 22 letter, except that it was shown to Chief Judge Muecke of the United States District Court for the District of Arizona. Again, this was not sufficient public disclosure to implicate a liberty interest.[16]

---

**15.** Public disclosure resulting from Sipe's legal challenges to her termination cannot provide retroactive support for her liberty interest claim. *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976).

**16.** The Court need not address the question whether the statements in the Audit Report,

which were not made in connection with Sipe's termination, could trigger the requirements of due process under *Roth* and its progeny. *See Vanelli v. Reynolds School Dist. No. 7,* 667 F.2d 773, 777–78 (9th Cir.1982) (suggesting that stigmatizing charge must be "made in connection with the termination of employment" in order to implicate liberty interest).

## IV

## REMEDY

Based on the foregoing analysis, the Court concludes that plaintiff is entitled to prevail on her claim that she was not validly terminated from employment as a deputy clerk of the Arizona Bankruptcy Court. Pursuant to the Administrative Procedures Act, the Court will set aside the AO's action in separating Sipe from the judicial service, because that action was not within the AO's statutory authority. *See* 5 U.S.C. § 706(2)(C). Sipe is also entitled to recover the pay she should have received between the time of the invalid termination and separation and the time of reinstatement pursuant to the Court's order. *See United States v. Wickersham,* 201 U.S. 390, 399, 26 S.Ct. 469, 472, 50 L.Ed. 798 (1906); *see also United States v. Testan,* 424 U.S. 392, 402, 96 S.Ct. 948, 955, 47 L.Ed.2d 114 (1976).

The reinstatement of plaintiff is ordered exclusively because plaintiff was not validly terminated from service. The Court's judgment does not in any way alter the power of the clerk to place her on administrative leave, to assign her other duties, or to take any other action affecting Sipe's employment in a manner authorized by statute and applicable regulations.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that plaintiff Mary Patricia Sipe promptly be restored by the Administrative Office of the United States Courts to the status of a deputy clerk employed by the United States Bankruptcy Court for the District of Arizona.

IT IS FURTHER HEREBY ORDERED, ADJUDGED AND DECREED that plaintiff have and recover an award of money in the amount of the total salary payments she would have received had she continued to occupy her previous Judicial Service grade and step between August 21, 1983 and the date of this order, less the total amount of all payments she has received that she would not have recovered but for her separation from the Judicial Service on August 21, 1983.

IT IS FURTHER HEREBY ORDERED that in the absence of stipulation, each party shall submit a memorandum, supported by affidavits where necessary, for the purpose of enabling the Court to compute the monetary recovery to which Sipe is entitled. Plaintiff's memorandum shall be filed not later than May 28, 1984. Defendants' memorandum shall be filed not later than June 11, 1984. Plaintiff's reply, if any, shall be filed not later than June 18, 1984.